RICHARD T. DRURY (Cal. Bar No. 163559)
MICHAEL R. LOZEAU (Cal. Bar No. 142893)
CHRISTINA M. CARO (Cal. Bar No. 250797)
LOZEAU | DRURY LLP
410 12th Street, Suite 250
Oakland, CA 94607
Tel:  (510) 836-4200; Fax: (510) 836-4205
E-mail:  richard@lozeaudrury.com;
            christina@lozeaudrury.com

*Attorneys for all Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLOBAL COMMUNITY MONITOR, a California nonprofit corporation; LABORERS' INTERNATIONAL UNION OF NORTH AMERICA LOCAL UNION NO. 783, an organized labor union; RANDAL SIPES, JR., an individual; RUSSEL COVINGTON, an individual; <br><br>      Plaintiffs, <br><br>      vs. <br><br> MAMMOTH PACIFIC, L.P., a California Limited Partnership; ORMAT NEVADA, INC., a Delaware Corporation; ORMAT TECHNOLOGIES, INC., a Delaware Corporation; and DOES I – X, inclusive, <br><br>      Defendants. | Case No.: _____ <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES** <br><br> [Clean Air Act, 42 U.S.C. §7604(a)] |

GLOBAL COMMUNITY MONITOR ("GCM"); LABORERS' INTERNATIONAL

UNION OF NORTH AMERICA LOCAL UNION NO. 783 ("LiUNA"); RANDAL SIPES, JR.;

and RUSSEL COVINGTON (collectively, "Plaintiffs"), by and through their counsel, hereby

allege:

## INTRODUCTION

1.  This lawsuit seeks to remedy violations of the federal Clean Air Act ("Act") and

the Great Basin Unified Air Pollution Control District's ("GBUAPCD" or "Air District") Rule 209-A (Standards for Authorities to Construct) and Rule 209-B (Standards for Permits to Operate) by Defendants MAMMOTH PACIFIC LIMITED PARTNERSHIP (L.P.) ("MPLP"), ORMAT NEVADA, INC. ("Ormat Nevada"), and ORMAT TECHNOLOGIES, INC. ("Ormat Technologies") (collectively, Ormat Technologies, MPLP and Ormat Nevada shall be referred to as "Ormat").

2.      Ormat has illegally constructed and operated three geothermal power plants, and proposes to construct and operate a fourth power plant, in Mono County, with fugitive emissions of volatile organic compounds ("VOCs") of over 250 pounds per day ("lbs/day"), without complying with Rule 209-A and 209-B.  In particular, Ormat has failed to implement best available control technology ("BACT") and emissions offsets at any of its plants to mitigate the plants' excess VOC emissions, as required by Rule 209-A.

3.      The Great Basin Unified Air Pollution Control District ("GBUAPCD" or "Air District") is the agency responsible for air quality regulation in the Great Basin Valleys ("GBV") Air Basin, where Ormat's geothermal plants are located.  The GBV Air Basin encompasses Mono, Inyo, and Alpine Counties.  The Air District has established rules and regulations to reduce the emission of ozone-forming pollutants such as VOCs, including Rule 209-A and Rule 209-B.

4.      Rule 209-A prohibits the issuance of an authority to construct ("ATC") permit for any new stationary source or modification to a stationary source that emits 250 pounds per day ("lbs/day") or more of VOCs unless the facility requires emissions offsets and installs BACT, which is generally defined as the most effective emissions control technique achieved in practice for the category or class of source to which it applies.  A facility's approved emissions limitation (potential to emit) is considered the facility's emissions rate for purposes of applying Rule 209-A.  Rule 209-A, sect. C.1.

5.      Rule 209-B prohibits the issuance of a permit to operate ("PTO") for any new or modified stationary source to which Rule 209-A applies unless the owner or operator of the

source has obtained an ATC permit granted pursuant to Rule 209-A, and ensures that all required emissions offsets will be implemented at start-up and maintained throughout the source's operational life.  Rule 209-B also prohibits "start-up periods" of over 90 days for simultaneous operation of an existing source with a new or replacement stationary source.  Rule 209-B, sect. A.3.

6.     Ormat owns and operates the three existing geothermal power plants, known as the Mammoth Pacific I Geothermal Facility ("MP-I"), Mammoth Pacific II Geothermal Facility ("MP-II") and Pacific Lighting Energy Systems Unit I Geothermal Development Project ("PLES-I") (collectively, "Ormat Complex"), and one planned geothermal replacement plant ("M-1") in the Casa Diablo geothermal development complex ("Casa Diablo Geothermal Development"), located two miles east of Mammoth Lakes, California, in the Mono-Long Valley Known Geothermal Resource Area ("KGRA").  The Casa Diablo Geothermal Development is located within the GBV Air Basin.[1]

7.     The plants emit VOCs in the form of fugitive motive fluid emissions of either n-pentane or isobutene through valves, flanges, seals, and other unsealed joints in facility equipment, at levels above the Rule 209-A threshold.

8.     Ormat has violated Rule 209-A and Rule 209-B because it applied for and obtained permits authorizing combined emissions limits for MP-I as a single source, and for MP-II and PLES-I as a single source, of 500 lbs/day each of fugitive VOC emissions – double the Rule 209-A threshold – without installing BACT, without obtaining emissions offsets, and without obtaining permits in compliance with Rule 209-A and Rule 209-B.  Ormat subsequently modified the MP-I plant in 2013 without complying with Rule 209-A or Rule 209-B.

9.     Ormat has further violated Rule 209-A and Rule 209-B by proposing to construct

---

[1] A fourth plant is proposed for the Casa Diablo Complex, Casa Diablo IV, a new 33 MW binary power plant with 16 wells and a pipeline system on Inyo National Forest lands and adjacent private lands ("CD-IV").  CD-IV has applied for permits from the Air District pursuant to Rule 209-A, but has not yet been approved or constructed.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES

and operate the M-1 replacement plant simultaneously with the MP-I plant for up to two years at a combined VOC emission rate of 705 lbs/day, more than eight (8) times the maximum start-up period allowed by Rule 209-B, and without first obtaining a Rule 209-A permit, installing BACT and obtaining emissions offsets at either plant.

10.     Finally, Ormat has violated Rule 209-A and Rule 209-B by owning and operating the three existing geothermal plants for over twenty years – MP-I, MP-II, and PLES-I – as a single stationary source, without applying for or obtaining an ATC permit pursuant to Rule 209-A, or a PTO permit pursuant to Rule 209-B, for the Ormat Complex as a whole.

11.     The Ormat Complex has connected operations that meet Rule 209-A's definition for a single stationary source.  The Ormat Complex plants are owned and operated by the same company, located on adjacent lands, share a single geothermal wellfield of three wells, share a common control room, share common pipes which carry geothermal fluid to and from the wellfield, and share other common facilities for economy and operational efficiencies.

12.     The permitted VOC emissions of the Ormat Complex total 1000 lbs/day from combined point and fugitive motive fluid emissions.  The Ormat Complex thus has the potential to emit 1000 lbs/day of VOCs.  Ormat was required to install BACT or obtain emissions offsets for the Ormat Complex pursuant to Rule 209-A.  Its failure to do has resulted in ongoing violations of Rule 209-A and 209-B for over twenty years.

13.     As a result of each Defendant's unlawful conduct, and failure to install appropriate emissions controls to control the Ormat Complex facilities' fugitive VOC emissions pursuant to Rules 209-A and Rule 209-B, excess amounts of harmful VOC emissions have been and are still being released into the atmosphere.

14.     Plaintiffs GCM and LiUNA are non-profit organizations whose members live, work and recreate in the direct vicinity of the Ormat Complex.  Plaintiffs Randal Sipes, Jr. and Russel Covington are individuals who live, work, and recreate in the direct vicinity of the Ormat Complex and within the air basin affected by Ormat's illegal air pollution. All Plaintiffs are and will continue to be adversely affected by the air pollution from the Ormat Complex at

levels far above those permitted by federal law.

## JURISDICTION AND PREREQUISITES TO FILING

15.     This Court has jurisdiction over this action pursuant to section 304(a) and (c) of the Clean Air Act, 42 U.S.C. §7604(a) and (c), and pursuant to federal question jurisdiction under 28 U.S.C. §1331.

16.     On May 7, 2014, Plaintiffs gave notice of Ormat's Clean Air Act violations and Plaintiffs' intent to file suit by mailing a Notice of Intent to Sue letter ("NOI") to Ormat, to the Administrator of the United States Environmental Protection Agency ("EPA"), to the Regional Administrator of EPA Region IX, and to the State of California, as required by §304(b) of the Act, 42 U.S.C. § 7604(b).  The NOI informed Ormat that Plaintiffs intended to sue Ormat unless it came into compliance with the Clean Air Act within sixty (60) days.  A true and correct copy of the NOI is attached hereto as Exhibit A.

17.      More than 60 days have passed since service of the notices described in the previous paragraph. Ormat remains in violation of the Clean Air Act.  Neither EPA, the state, nor the Air District have commenced, nor are diligently prosecuting, a civil action in a court of the United States or any state to require compliance with the federal Clean Air Act requirements pursuant to 42 U.S.C. § 7604(b)(1)(B).

18.     Ormat did not come into compliance with Rule 209-A or Rule 209-B during the 60-day period, and did not meaningfully respond to the NOI with any evidence to support a basis to withdraw the NOI.   While Ormat's counsel expressed a desire to meet with Plaintiffs, it proposed to meet *after* the expiration of the 60-day notice period, not before.

19.     This suit seeks declaratory and injunctive relief, civil penalties, and an award of the costs of this litigation against Ormat to ensure that Ormat fully complies with the requirements of the Clean Air Act.

20. Ormat has violated, and continues to violate Rules 209-A and Rule 209-B by constructing and operating the existing Ormat Complex facilities without requisite Rule 209-A and Rule 209-B permits and without complying with Rule 209-A and 209-B's requirements.

Ormat has violated, and continues to violate Rule 209-A and 209-B by proposing to construct and operate the M-1 facility without complying with the requirements of Rule 209-A and Rule 209-B. Rule 209-A and Rule 209-B have been approved by the U.S. Environmental Protection Agency ("EPA") as part of the State Implementation Plan ("SIP"). Pursuant to § 304(a)(1) of the Clean Air Act, 42 U.S.C. § 7604(a)(1), Plaintiffs may enforce the State Implementation Plan.

## VENUE

21. Venue is proper in the Sacramento Division of the of the Eastern District of California pursuant to section 304 of the Act, 42 U.S.C. § 7604, and 28 U.S.C. §§ 1391(b), (c), and (e) because a substantial part of the events or omissions giving rise to the claim occurred in the County of Mono ("Mono County"), MPLP either resides or has its principal place(s) of business in this District, and the facilities that are the subject of this Complaint are located within Mono County.

## PARTIES

22. Plaintiff GLOBAL COMMUNITY MONITOR ("GCM") is a non-profit corporation organized under California's Corporations Law. GCM, founded in 2001, trains and supports communities in the use of environmental monitoring tools to understand the impact of air pollution and toxic chemical releases on their health and the environment. GCM is dedicated to, among other causes, reducing the levels of unhealthful air pollution to which its members and members of the public are exposed. GCM works through its members to empower local communities to demand their right to clean air by training its members to identify sources of illegal pollution, working with industrial neighbors to reduce facility air emissions, and by enforcing state and federal air quality laws.

23. GCM has members who live, work, and recreate in Mono and Inyo counties, including in the direct vicinity of the Town of Mammoth Lakes and the Ormat Complex. Members of GCM regularly breathe the excessively polluted air of the Great Basin Valleys ("GBV") Air Basin and have a direct interest in the outcome of this action. These members are

regularly exposed to the localized and regional air pollution caused by Ormat's illegal construction and operation of its geothermal power plants in violation of federal law, including but not limited to GCM member Randal Sipes, Jr. Members of GCM have suffered, and will continue to suffer, injury in fact as a result of the violations of law at issue in this action, including but not limited to, being forced to breathe heavily polluted air at levels substantially higher than those allowed by federal law.

24. Plaintiff LABORERS' INTERNATIONAL UNION OF NORTH AMERICA LOCAL UNION NO. 783 ("LiUNA") is a non-profit laborers' and public service employees' union. LiUNA advocates to assure its members access to a safe and healthful environment, both on and off the job, including advocating for policies and changes in development projects that reduce air pollution. LiUNA has members in or near Mono County and the adjoining Inyo County. LiUNA has members who live, work, and recreate in Mono and Inyo counties, including in the direct vicinity of the Town of Mammoth Lakes and the Ormat Complex, including but not limited to Mr. Sipes and Mr. Covington.

25. LiUNA and its members in Mono and Inyo Counties have several distinct legally cognizable interests in this project. LiUNA members regularly travel to the Mammoth Lakes area of Mono County to work and recreate. LiUNA members are presently, and will continue to be, exposed to degraded air quality and other risks related to construction and operation of the Ormat Complex facilities that have not been adequately analyzed or mitigated. The interests of LiUNA members are unique and will be directly impacted by the project. LiUNA's interests are not adequately represented by other parties.

26. The interests of LiUNA's members that are at stake in this action are germane to LiUNA's organizational purpose. LiUNA's Local Union Constitution charges LiUNA with the responsibility to enhance, preserve and protect the welfare and interest of its members. LiUNA's Statement of Organizational Purpose states in pertinent part:

///

LIUNA Local Union No. 783 hereby commits to the following organizational purposes on behalf of its members:
• To protect recreational opportunities for its members to improve its members quality of life when off the job;
• To assure our members access to safe, healthful, productive, and esthetically and culturally pleasing surroundings both on and off the job;
• To promote environmentally sustainable businesses and development projects on behalf of its members, including providing comments raising environmental concerns and benefits on proposed development projects;
• To advocate for changes to proposed development projects that will help to achieve a balance between employment, the human population, and resource use which will permit high standards of living and a wide sharing of life's amenities by its members as well as the general public;
• To take steps to preserve important historic, cultural, and natural aspects of our national heritage, and maintain, wherever possible, an environment which supports diversity and variety of individual choice;
• To advocate on behalf of its members for programs, policies, and development projects that promote not only good jobs but also a healthy natural environment and working environment, including but not limited to advocating for changes to proposed projects and policies that, if adopted, would reduce air, soil and water pollution, minimize harm to wildlife, conserve wild places, reduce traffic congestion, reduce global warming impacts, and assure compliance with applicable land use ordinances; and
• To work to attain the widest range of beneficial uses of the environment without degradation, risk to health or safety, or other undesirable and unintended consequences.

LiUNA's interests in effectuating this organizational purpose is are not adequately represented by other parties.

27.     Plaintiff RANDAL SIPES, JR. is a GCM member and a LiUNA member who resides in Bishop, California, approximately forty (40) miles from the Ormat Complex.  Mr. Sipes lives, works, and recreates near the Ormat Complex and within the GBV Air Basin, where he regularly breathes the air.  Mr. Sipes grew up in Bishop, California, within the GBV Air Basin, and has lived there for most of his life.  He frequently works on construction and road projects in and around Inyo and Mono Counties, including within a few miles of the Town of Mammoth Lakes in the vicinity of the Ormat Complex.

28.     Mr. Sipes regularly recreates in the Mammoth Lakes area.  He hikes on trails around the Mammoth Lakes area with friends and family as often as twice per week at certain times of year, fishes at nearby Lake Mary, Twin Lakes, and Grant Lake on weekends, and snowboards during the winter months at nearby Mammoth Mountain.  Mr. Sipes is and will

continue to be directly and adversely affected by air pollution from the Ormat Complex.  Mr. Sipes breathers the air during these activities, and suffers and will continue to suffer injury in fact as a result of the violations of law related to the Ormat Complex at issue in this action, including but not limited to being forced to breathe heavily polluted air at levels substantially higher than those allowed by federal law.

29.     Plaintiff RUSSEL COVINGTON is a LiUNA member who resides on a Paiute reservation about three (3) miles outside of the town of Bishop, California, approximately forty-three (43) miles from the Ormat Complex, within the GBV Air Basin.  Mr. Covington lives with his wife, Balery Covington, and has a brother and sister-in-law who live in Bishop.  Mr. Covington and the members of his family regularly breathe the air in the GBV Air Basin that is polluted by excess air emissions from Ormat's operations at the Ormat Complex at levels substantially higher than those allowed by federal law.

30.     Mr. Covington frequently visits the Mammoth Lakes area in Mono County in the direct vicinity of the Ormat Complex.  Mr. Covington travels to Mammoth Lakes a few times a year, usually with his wife, to visit the town and shops, where they regularly breathe the air. Mammoth Lakes is about a forty to forty-five (40-45) minute drive from Mr. Covington's residence.  Mr. Covington is and will continue to be directly and adversely affected by air pollution from the Ormat Complex.  Mr. Covington suffers and will continue to suffer injury in fact as a result of the violations of law related to the Ormat Complex at issue in this action, including, but not limited to, being forced to breathe heavily polluted air at levels substantially higher than those allowed by federal law.

31.   Plaintiffs are persons within the meaning of section 302(e) of the Act, 42 U.S.C. § 7602(e), and may commence a civil action under section 304(a) of the Act, 42 U.S.C. § 7604(a).

32.     Defendant MAMMOTH PACIFIC LIMITED PARTNERSHIP (L.P.) ("MPLP") is a California limited partnership with its principal place of business in Mammoth Lakes, California.  MPLP is an owner and operator of the existing Ormat Complex, including the MP-I, MP-II, and PLES-I plants.  MPLP has applied for and obtained land use permits from Mono

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES

County to construct the M-1 replacement plant.  As the owner, operator, and applicant for the existing and proposed Ormat Complex facilities, MPLP is responsible for applying for all necessary permits and approvals required for the Ormat Complex, including ATC, PTOs, and other air emission permits. MPLP is a "person" within the meaning of Section 302(e) of the Act, 42 U.S.C. §7602(e).

33.     Defendant ORMAT NEVADA, INC. ("Ormat Nevada") is a Delaware Corporation with its principal place of business in Reno, Nevada.  Ormat Nevada is an owner and operator of the existing Ormat Complex, including the MP-I, MP-II, and PLES-I plants. Ormat Nevada is the parent company of MPLP, and a wholly owned subsidiary of Ormat Technologies, Inc.  Ormat Nevada is the owner in fee of the land on which the M-1 replacement plant will be constructed, and is the recipient of land use approvals from Mono County to construct M-1.  As the owner, operator, and applicant for the existing and proposed Ormat Complex facilities, Ormat Nevada is responsible for applying for all necessary permits and approvals required for the Ormat Complex, including ATC, PTOs, and other air emission permits. Ormat Nevada is a "person" within the meaning of Section 302(e) of the Act, 42 U.S.C. §7602(e).

34.     Defendant ORMAT TECHNOLOGIES, INC. ("Ormat Technologies") is a Delaware Corporation with its principal place of business in Reno, Nevada.  Ormat Technologies is an owner and operator of the existing Ormat Complex, including the MP-I, MP-II, and PLES-I plants.  Plaintiffs are informed and believe that Ormat Technologies is the parent company of MPLP.  Ormat Technologies is the owner in fee of the land on which the M-1 replacement facility will be constructed, and is the recipient of land use approvals from Mono County to construct M-1.  As the owner, operator, and applicant for the existing and proposed Ormat Complex facilities, Ormat Technologies is responsible for applying for all necessary permits and approvals required for the Ormat Complex, including ATC, PTOs, and other air emission permits. Ormat Technologies is a "person" within the meaning of Section 302(e) of the Act, 42 U.S.C. §7602(e).

35.     Plaintiffs do not know the true names or capacities of the persons or entities sued as Respondents DOES I through X, inclusive, and therefore sue these defendants by their fictitious names. Plaintiffs will amend the Complaint to set forth the names and capacities of the Doe defendants along with appropriate charging allegations when such information has been ascertained.

36.     As a result of Ormat's failure to comply with Rule 209-A and Rule 209-B, Plaintiffs and their members are being and will be exposed to harmful air pollution that will cause acute and chronic respiratory health impacts.  This pollution would be controlled if Ormat were required to comply with the Clean Air Act. An injunction from this Court requiring Ormat to comply with GBUAPCD Rule 209-A and Rule 209-B will help to remedy the harm faced by Plaintiffs and their members.

37.     Ormat is subject to the assessment of civil penalties for its violations of the Clean Air Act pursuant to Clean Air Act §304(a), 42 U.S.C. §7604(a).  An assessment of civil penalties would help remedy Defendants' past and present violations of the Clean Air Act, would help remove the economic benefit of non-compliance, would have a punitive and retributive effect on Defendants, and would have a general and specific deterrent effect in preventing future violations by Ormat and other major sources of pollution.

38.     This lawsuit seeks civil penalties against Ormat in each cause of action under the Clean Air Act, up to and including $37,500 per day, per violation.

39.     Section 304(g) of the federal Clean Air Act authorizes the award of $100,000 for beneficial mitigation projects to enhance the public health or environment.  Such an award would mitigate, to some extent, the harm to Plaintiffs' members living, working, and recreating near the Project caused by Defendants' ongoing violations of the Clean Air Act.

40.     When, in this Complaint, reference is made to any act of Ormat, such reference shall be deemed to include the officers, directors, agents, employees, or representatives of Ormat who committed or authorized such acts, or failed and omitted adequately to supervise or properly to control or direct their employees while engaged in the management, direction,

operation, or control of the affairs of Ormat, and did so while acting within the course and scope of their employment or agency.

## LEGAL BACKGROUND

41.     The Clean Air Act ("Act" or "CAA"), 42 USC § 7401 et seq., sets out a comprehensive regulatory scheme designed to prevent and control air pollution.  The Act establishes ambient air quality standards and permit requirements for both stationary and mobile sources.  Congress passed the Clean Air Act in order to prevent air pollution and to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare. 42 U.S.C. §7401.

42.     The Act directs the EPA to prescribe national ambient air quality standards ("NAAQS") at a level sufficient to protect the public health and welfare.  42 U.S.C. §7409(a) and (b).

43.     Each state is required to develop a "state implementation plan" ("SIP") to achieve the NAAQS established by the EPA.  42 U.S.C. §7410(a).  If U.S. EPA approves a SIP, or any rules into the SIP, its requirements become federal law and are fully enforceable in federal court by the local agency, EPA, or "any person."

44.     Section 304(a) of the Clean Air Act, 42 U.S.C § 7604(a), authorizes any person to commence a civil action on his own behalf against any person, "who is alleged to have violated (if there is evidence that alleged violation has been repeated) or to be in violation of (A) an emission standard or limitation under this chapter."

45.     The Clean Air Act, 42 U.S.C §§ 7604(f)(1),(3), and (4), broadly defines the term "emission standard or limitation" to mean:

(1) "a schedule or timetable of compliance, emission limitation, standard of performance or emission standard" or
(3) "any condition or requirement under an applicable implementation plan relating to…air quality maintenance plans… any condition or requirement under Title VI [42 USCS §§ 7671 et seq.] (relating to ozone protection), or any requirement under section 111 or 112 [42 USCS §§ 7411, 7412] (without regard to whether such requirement is expressed as an emission standard or otherwise)" or

(4) "any other standard, limitation, or schedule established under any permit issued pursuant to title V [42 USCS §§ 7661 et seq.] or under any applicable State implementation plan approved by the Administrator, any permit term or condition, and any requirement to obtain a permit as a condition of operations" which is in effect under this chapter or under an applicable implementation plan."

46.     The Clean Air Act requires the states to adopt, as part of their SIPs, "enforceable emission limitations and other control measures, means, or techniques (including economic incentives such as fees, marketable permits, and auctions of emissions rights), as well as schedules and timetables for compliance, as may be necessary or appropriate to meet the applicable requirements of this Act."  42 USCS § 7410(a)(2).

47.     The Clean Air Act authorizes local air districts to adopt appropriate air quality measures to achieve and maintain the NAAQS.  *See, e.g.*, Sections 113(b)(1), 304(a)(2) and 304(f) of the Act, 42 U.S.C. §§ 7413(b)(1), 7604(a)(2) & (f); *Her Majesty the Queen v. Detroit*, 874 F.2d 332, 335 (6th Cir. 1989); *American Lung Ass'n v. Kean*, 871 F.2d 319, 322 (3d Cir. 1989); *United States v. Congoleum Corp.*, 635 F. Supp. 174, 177 (E.D. Pa. 1986).  Once an Air District Regulation is approved by EPA into California's SIP, it becomes an enforceable "emission standard or limitation" as defined by 42 U.S.C §7604(f)(1), (3), and (4).

48.     The Air District is the local governmental air quality control agency charged under the California Clean Air Act with promulgating rules and regulations to reduce air pollution in the GBV Air Basin.  The Air District's jurisdiction includes the three counties that make up the air basin – Inyo, Mono, and Alpine Counties.  The Air District maintains its office in Bishop, California.

49.     The Air District promulgated Rule 209-A (Standards for Authorities to Construct) and Rule 209-B (Standards for Permits to Operate).  Rule 209-A and Rule 209-B were adopted by GBUAPCD on or about August 20, 1979.  Both rules were federally approved by the EPA as part of California's SIP on or about June 18, 1982.  47 Fed. Reg. 26380 (June 18, 1982).  Thus, Rule 209-A and Rule 209-B are part of the Clean Air Act, and have been federally enforceable by citizen suit on all dates relevant to this matter.  42 U.S.C. §§ 7413(b)(1), 7604(a)(2) & (f); *Her Majesty the Queen v. Detroit*, 874 F.2d 332, 335 (6th Cir. 1989).

50.    By committing the violations of Rule 209-A and Rule 209-B, Ormat has violated the Clean Air Act §304(a), 42 U.S.C. §7604(a), by violating an "emission standard or limitation" as defined by 42 U.S.C §7604(f)(1), (3), and (4).

51.    Rule 209-A is designed to control air pollution emitted from stationary sources by requiring new stationary sources and modifications to existing stationary sources to install BACT and require emissions offsets where construction and operation of the sources will result in a net increase in emissions of 250 or more lbs/day of any pollutant for which there is a NAAQS.  Rule 209-A, set. A.1.  A facility's approved emissions limitation (potential to emit) is considered the facility's emissions rate for purposes of applying Rule 209-A.  Rule 209-A, sect. C.1.

52.    Ozone is an applicable NAAQS for application of Rule 209-A and Rule 209-B. The GBV Air Basin is classified as a State designated nonattainment area for ozone.  17 Cal. Code Regs ("CCR") § 60201. VOCs, which are emitted during Ormat's operations, are precursors to ozone formation in the atmosphere, and are therefore regulated under Rule 209-A and Rule 209-B.  VOCs are regional air pollutants that adversely affect ozone concentrations throughout the air basin – not only in the area near the source.

53.    Rule 209-A defines "Stationary Source" as "any aggregation of air-contaminant-emitting equipment which includes any structure, building, facility, equipment, installation or operation (or aggregation thereof) which is located on one or more bordering properties within the District and which is owned, operated, or under shared entitlement to use by the same person."  Rule 209-A, set. F.3.  Under Rule 209-A, items of air-contaminant-emitting equipment are considered aggregated into the same stationary source, and items of non-air-contaminant-emitting equipment are considered associated with air-contaminant-emitting equipment where the operation of each item of equipment is dependent upon, or affects the process of, the other; and the operation of all such items of equipment involves a common raw material or product.  *Id.*

///

54.     BACT is defined as the more stringent of:

a. The most effective emissions control technique which has been achieved in practice, for such category or class of source; or
b. Any other emissions control technique found, after public hearing, by the Air Pollution Control Officer or the Air Resources Board to be technologically feasible and cost/effective for such class or category of sources or for a specific source; or
c. The most effective emission limitation which the EPA certifies is contained in the implementation plan of any State approved under the Clean Air Act for such class or category or source, unless the owner or operator of the proposed source demonstrates that such limitations are not achievable.  Rule 209-A, sect. F.1.

55.     Rule 209-B prohibits the issuance of a permit to operate for any new or modified stationary source or any portion thereof to which Rule 209-A applies unless the owner or operator of the source has obtained an ATC granted pursuant to Rule 209-A, and the Air Pollution Control Officer ("APCO") confirms that any offsets required as a condition of a Rule 209-A ATC will commence at the time of or prior to initial operations of the new source or modification, and will be maintained throughout the operation of the new or modified source.

56.     Rule 209-B allows a maximum of 90 days as a start-up period for simultaneous operation of an existing stationary source and a new stationary source or replacement.  Rule 209-B, sect. A.3.

## FACTUAL ALLEGATIONS

### Facility Background

57. The Casa Diablo Geothermal Development consists of three existing geothermal plants – MP-I, a 14 megawatt ("MW") facility which commenced operation in 1984; MP-II, also known as "G2," a 15 MW facility that commenced operations in 1990; and PLES-I, also known as "G3," another 15 MW facilities which commenced operations in 1990 (collectively, MP-I, MP-II, and PLES-I are referred to as the "Ormat Complex").

**A.  Fugitive Emissions.**

58. The facilities emit VOCs in the form of fugitive motive fluid emissions of either n-pentane or isobutene, through valves, flanges, seals, and other unsealed joints in facility equipment.  Both isobutane and n-pentane are considered reactive organic gases ("ROGs") and

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES

VOCs (collectively, "VOCs") under respective state and federal air regulations.  VOCs combine with nitrogen oxides ("NOx") to form ozone in the atmosphere.  Ozone is a criteria air pollutant for which there is a NAAQS.  VOCs are regulated as ozone precursors under Rule 209-A and Rule 209-B.

59. According to EPA, breathing ground-level ozone can result in a number of health effects that are observed in broad segments of the population, including induction of respiratory symptoms, decrements in lung function, and inflammation of airways.  Respiratory symptoms can include coughing, throat irritation, pain, burning, or discomfort in the chest when taking a deep breath, and chest tightness, wheezing, or shortness of breath.  Breathing high daily concentrations of ozone is also associated with increased asthma attacks, increased hospital admissions, increased daily mortality, and other markers of morbidity.  See http://www.epa.gov/apti/ozonehealth/population.html.

**B. Mammoth Pacific I Geothermal Facility.**

60. MP-I was the first geothermal plant at the Ormat Complex, commencing operation in 1984.  It includes a 14 megawatt ("MW") binary power plant which draws geothermal fluid from the shared geothermal wellfield, as well as production and injection fluid pipelines, and ancillary facilities.  MP-I is located on private land owned by Ormat Nevada.

61. The MP-I facility consists of two units – MP-I West and MP-I East.  As a whole, the existing MP-I facility has potential to emit VOCs at a rate of approximately 500 lbs/day (91.3 tons/year).  The MP-I facility has been operating at about half of its permitted capacity since at least 2010.

62. The Air District issued the original PTOs for the MP-I facility on or around May 16, 1988.  MP-I was originally permitted by GBUAPCD as two facilities under two separate PTOs.  PTO No. 325 was issued on May 16, 1988 for MP-I West (aka "G1 unit 100"), a 5 MWe power plant.  PTO No. 328 was issued on May 16, 1988 for MP-I East (aka "G1 unit 200"), a 5 MWe power plant.  On or around October 2, 1991, a single permit to operate was issued for the combined MP-I facility, PTO No. 601.

63. On or around February 8, 2010, GBUAPCD issued PTOs Nos. 602-03-09 and 601-03-09, which approved a combined emissions limit for MP-I East and MP-I West of 500 lbs/day total VOC emissions, and changed the names of the facilities.  MP-I West was renamed "G1 unit 100," and MP-1 East was renamed "G1 unit 200."

64. The combined emissions limit resulted in an emission level from the single MP-I facility in excess of 250 lbs/day of VOCs.  This emission level required MP-I to implement BACT and require emissions offsets pursuant to Rule 209-A.

65. Ormat failed to apply for or obtain an ATC permit pursuant to Rule 209-A.  On or around May 1, 2013, GBUAPCD issued ATC Permit Nos. 601-04-13 and 602-04-73, which authorized facility equipment replacements to upgrade turbines and condensers, and approved a change in motive fluid.  None of these permits implement BACT for MP-I.  The MP-I air permits similarly do not treat the Ormat Complex as a single stationary source, and fail to require compliance with GBUAPCD Rules 209-A and 209-B for the Ormat Complex as a single source.

**C.  M-1.**

66. In November 2012, Mono County approved land use permits for the M-1 replacement plant, which will generate 18.8 MW of electricity, and will replace the 14 MW MP-I.  During M-1's 30-year operations, the M-I plant will emit at least 205 lbs/day of VOCs in the form of fugitive n-pentane emissions, an ozone precursor, through valves, flanges, seals, and other unsealed joints in facility equipment.  During the two-year startup phase, M-1 and MP-I will operate simultaneously, resulting in combined net fugitive VOC emissions of approximately 705 lbs/day (MP-I's 500 lbs/day plus M-1's 205 lbs/day).

**D.  Mammoth Pacific II Geothermal Facility.**

67. The MP–II facility is also located on Ormat's private lands, just 1,200 feet east–northeast of the MP-I facility and directly adjacent to it.  MP-II shares production and injection well fields with MP-I, such that geothermal fluid produced from the production wells can be conveyed to either of the two plants, and spent (cooled) geothermal fluid discharged from either

of the two plants is injected into any of the available injection wells.  MP-II operates under a Conditional Use Permit ("CUP") from the County.

68. On or around July 26, 1988, GBUAPCD issued the original ATCs for the MP-II facility, ATC Nos. 329 and 583.  The original PTO for MP-II was issued in 1991.

**E. PLES-I Geothermal Development Project.**

69. PLES–I is a 15MW power plant which is a "twin" to the MP–II facility.  PLES-I and its associated geothermal production and injection wells are located on adjacent public lands administered by the U.S. Forest Service.  MP-II and PLES-I were permitted simultaneously by the Air District, but were issued separate permits.

70. In 1989, GBUAPCD issued the original ATCs for PLES-I, ATCs Nos. 279 and 575. The original PTO for PLES-I was issued in 1991.  On or around February 8, 2010, GBUAPCD issued PTOs Nos. 583-03-09 (MP-II) and 575-03-09 (PLES-I), approving a combined emissions limit for MP-II and PLES-I of 500 lbs/day total VOC emissions from combined point and fugitive isobutene emissions.

71. Neither PLES-I nor MP-II have applied for nor installed BACT.

**F. Connected Operations.**

72. Ormat owns and operates the three existing geothermal facilities – MP-I, MP-II, and PLES-I – as a single source.  The operation of the equipment of all three facilities is dependent upon and affects the process of the other facilities' equipment.  The operation of all three facilities relies on the same raw geothermal material extracted from, and injected into, the same underlying resource.  MP-I, MP-II, and PLES-I rely on the same production wells and same underlying water resources, use a single control room and other shared facilities, have connected pipelines, have the same contract limitations on collective power production, have a single reclamation plan, and are operated by the same company, Ormat.  The three facilities also fall under the same industrial grouping – SIC Code 4911 (Electric Services), and NAICS Code 221119 (Other Electric Power Generation).

73. The existing production and injection wells of the MPLP Ormat Complex are

operated as a single system. Hot geothermal fluid from the production wells are routed to one or more of the existing power plants, where heat is extracted by the binary process, then the cooled fluid is injected into one or more of the injection wells.  The three facilities share a single combined physical pumping capacity of about 6,900,000 pounds per hour ("pph"). This physical pumping limit will not change with the M-I replacement plant.  Any increase in flow to the new M-1 plant over the existing flow to the MP-I plant must be offset by directly corresponding reductions in flow to the MP-II and/or PLES-I facilities.

74. The facilities have a shared pipeline system.  The existing Ormat Complex pipeline system will deliver the geothermal fluid to and from the new M–1 plant site. The existing production pipeline system passes immediately south of the proposed M–1 plant site. The proposed M–1 OEC unit would be connected to the existing Ormat Complex pipelines via new, above ground, production and injection fluid interconnection pipelines.  Finally, the isobutene used at the new M-1 facility will be transferred to either the MP–II or PLES–I plant sites as makeup motive fluid for those facilities.

75. Ormat has constructed and operated the existing MP-I, MP-II, and PLES-I plants without installing BACT or requiring emissions offsets for the facilities, in violation of Rule 209-A and Rule 209-B.  Ormat has also proposed to construct and operate the M-1 plant simultaneously with MP-I for two years without installing BACT or requiring emissions offsets for the facilities, in violation of Rule 209-A and Rule 209-B.

76. As a result of Ormat's illegal construction, modification, and operation of the Ormat Complex plants and proposed M-1 plant without complying with the federal Clean Air Act Rule 209-A and Rule 209-B, Plaintiffs are presently being exposed to air pollution at levels far above levels allowed by the Clean Air Act.

77. Every day since approximately January 1, 1989 that Ormat has failed to install BACT and require emissions offsets at the Ormat Complex in violation of Rule 209-A and Rule 209-B is a separate and distinct violation of the Clean Air Act, subject to penalties and injunctive relief under the Act.  Each additional violation of Rule 209-A and Rule 209-B

identified below is also a separate and distinct violation of the Clean Air Act, subject to penalties and injunctive relief under the Act.  Plaintiffs intend to seek the maximum penalties and injunctive relief allowed by law for each and every day for the entire statute of limitations period from July 8, 2009 through the present and through the date that Ormat comes into compliance with the Clean Air Act.

78. Unless this Court enjoins Ormat's operations, Plaintiffs, and members of the Plaintiff organizations, will continue to be exposed to unlawful levels of air pollution from Ormat's geothermal plants at approximately twice the level allowed by federal law.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
**Clean Air Act, 42 U.S.C. §7604(a) - Violation of Rule 209-A**
**(Proposing to Modify, and Modifying, MP-I Without Complying With Rule 209-A)**
**Declaratory and Injunctive Relief, Civil Penalties**
*By All Plaintiffs Against All Defendants*

79. All of the above paragraphs are incorporated herein by reference as if set forth again in full.

80. MP-I is a stationary source as defined by Rule 209-A, sect. F.3.  MP-I has a combined, permitted emissions limit of 500 lbs/day total VOC emissions, and is therefore subject to Rule 209-A's BACT and emissions offset requirements.

81. On or around May 1, 2013, Ormat applied for, and GBUAPCD issued, ATC Permit Nos. 601-04-13 and 602-04-73, which authorized "modification" of MP-I facility equipment to upgrade facility turbines and condensers, and approved a change in motive fluid.

82. MP-I was subject to Rule 209-A at the time Ormat applied for and obtained the modification permits.

83. Rule 209-A defines "modification" as "any physical change in, change in method of operation of, or addition to an existing stationary source, except that routine maintenance or repair shall not be considered to be a physical change." Rule 209-A, sect. F.2.  Changes that are not considered a "modification" under Rule 209-A include increases in production rate

(provided the increase does not exceed the operating design capacity of the source), increase in the hours of operation, and change in ownership of the source.  *Id.*

84.  The activities approved ATC Permit Nos. 601-04-13 and 602-04-73 constituted a stationary source modification within the meaning of Rule 209-A and the federal Clean Air Act.

85.  Ormat thereafter constructed the modifications, and began operating MP-I as modified stationary source within the meaning of Rule 209-A and the federal Clean Air Act.

86.  Ormat failed to comply with Rule 209-A by failing to install BACT at the MP-I facility, failing to require emissions offsets, and failing to obtain an ATC permit in compliance with the requirements of Rule 209-A prior to constructing the modifications.

87.  Ormat further violated Rule 209-A by applying for and obtaining permits to modify MP-I while it owned and operated other stationary sources within California which were out of compliance with applicable Clean Air Act and SIP emission limitations and standards.  Rule 209-A, sect. A.2.  At the time Ormat applied for and obtained ATC Permit Nos. 601-04-13 and 602-04-73, Ormat was simultaneously operating MP-II and PLES-I as a single stationary source with a combined VOC emissions limit of 500 lbs/day without installing BACT or requiring emissions offsets for MP-II and PLES-I.  Ormat was also operating the Ormat Complex as a single stationary source without installing BACT or complying wiht other Rule 209-A requirements.

88.  Because Ormat modified MP-I, and has commenced operation of the modified MP-I plant, without applying to GBUAPCD for an ATC that requires installation of BACT, purchase of emission offsets, or otherwise complies with all other Rule 209-A requirements, Ormat has violated and continues to violate the Clean Air Act.  This violation has been ongoing since at least May 1, 2013, and every day thereafter through the present.

89.  Ormat's violations of Rule 209-A are a violation of an emission standard or limitation, within the meaning of the Clean Air Act, and a violation of the Act's new source review performance standards.  42 U.S.C. §7411(e).  The violations are ongoing, and will continue unless remedied by an order from the Court.

90. Each day that Ormat fails to comply with Rule 209-A is a separate violation of the Act. Each day that Ormat modified MP-I without complying with Rule 209-A is a separate violation of the Act. Each day that Ormat operates MP-I without comply with Rule 209-A is a separate violation of the Act. Each violation and each day of violation constitutes a separate violation subject to penalties, injunctive and declaratory relief.

**<u>SECOND CAUSE OF ACTION</u>**
**Clean Air Act, 42 U.S.C. §7604(a) - Violation of Rule 209-A**
**(Proposing to Operate, and Operating, MP-I Above Rule 209-A Emissions Threshold**
**Without Complying With Rule 209-A and Without Authority to Construct Permit)**
**Declaratory and Injunctive Relief, Civil Penalties**
***By All Plaintiffs Against All Defendants***

91. All of the above paragraphs are incorporated herein by reference as if set forth again in full.

92. MP-I is owned and operated by Ormat as a stationary source within the meaning of Rule 209-A and the federal Clean Air Act, and has a combined VOC emissions limit above the Rule 209-A BACT threshold.

93. Ormat failed to apply for or obtain a Rule 209-A ATC permit for MP-I prior to commencing MP-I operations under the combined emissions limit, in violation of Rule 209-A.

94. On or around February 8, 2010, Ormat applied for and obtained PTOs Nos. 602-03-09 and 601-03-09 from GBUAPCD, which approved a VOC emissions limit of 500 lbs/day for MP-I. The MP-I facility has a potential to emit VOCs at a rate of 500 lbs/day.

95. Under Rule 209-A, a permit for a new or modified source must be denied if it results in an increase in emissions of VOCs of 250 or more lbs/day unless BACT and emissions offsets are required. Rule 209-A, sect. B.2.a. The approved emissions limitation (potential to emit) is considered the facility's emissions rate for this purpose. Rule 209-A, sect. C.1.

96. At 500 lbs/day, MP-I's combined emissions limit is double the Rule 209-A threshold for requiring both BACT and offsets. Therefore, Rule 209-A compliance was required for MP-I from the time Ormat applied for permits with the combined emissions limit.

97. Ormat failed to obtain an ATC permit pursuant to Rule 209-A for the MP-I facility

prior to commencing operations under the combined emissions limit, and has failed to install BACT or obtain required emission offsets at MP-I.  Ormat is currently operating the MP-I plant with a potential to emit of 500 lbs/day, without installing BACT or obtaining emissions offsets. Thus, Ormat has violated the Clean Air Act.  Ormat's operations have resulted, and threaten to further result, in emissions above levels allowed by federal law, including VOCs, precursors to the criteria air pollutant ozone.

98. Because Ormat obtained permits and commenced operation of MP-I under a combined VOC emissions limitation of 500 lbs/day without applying to GBUAPCD for a Rule 209-A permit, without installing BACT, and without purchasing emission offsets, Ormat has violated and continues to violate the Clean Air Act.  This violation has been ongoing since at least February 8, 2010.

99. Ormat's violations of Rule 209-A are a violation of an emission standard or limitation, within the meaning of the Clean Air Act, and a violation of the Act's new source review performance standards.  42 U.S.C. §7411(e).  The violations are ongoing, and will continue unless remedied by an order from the Court.

100. Ormat has violated Rule 209-A each and every day since February 8, 2010, and continues to violate Rule 209-A as set forth above.  Each day that Ormat fails to comply with Rule 209-A is a separate violation of the Act.  Each day that Ormat operates MP-I without complying with Rule 209-A is a separate violation of the Act.  Each violation and each day of violation constitutes a separate violation subject to penalties, injunctive and declaratory relief.

### THIRD CAUSE OF ACTION
**Clean Air Act, 42 U.S.C. §7604(a) - Violation of Rule 209-B**
**(Proposing to Operate, and Operating, the MP-I Facility Without**
**Required Permits, Including BACT)**
**Declaratory and Injunctive Relief, Civil Penalties**
*By All Plaintiffs Against All Defendants*

101. All of the above paragraphs are incorporated herein by reference as if set forth again in full.

102. Ormat has violated Rule 209-B by failing to apply for and failing to obtain

PTOs from the Air District to operate the air pollutant emitting equipment at the MP-I facility without first obtaining an ATC permit(s) pursuant to Rule 209-A.  Rule 209-B.A.1.

103.    On or around February 8, 2010, Ormat applied for and obtained PTOs Nos. 602-03-09 and 601-03-09 from GBUAPCD, which approved a combined VOC emissions limit for MP-I of 500 lbs/day.  Ormat failed to comply with Rule 209-B because Ormat failed to first apply for or obtain an ATC permit pursuant to Rule 209-A, and failed to install BACT and obtain emissions offsets, before it applied for and receiving a PTO pursuant to Rule 209-B.

104.    Prior to receiving a PTO and beginning to operate the MP-I facility, Ormat was required to comply with Rule 209-B, and Clean Air Act §173(a).  42 U.S.C. §7503(a).  Because compliance with Rule 209-B is predicated on compliance with Rule 209-A, by failing to apply for and obtain an ATC permit in compliance with Rule 209-A, Ormat also failed to comply with Rule 209-B, and illegally obtained PTOs that fail to comply with Rule 209-B.  This violation has been ongoing since at least February 8, 2010.

105.    Ormat's violations of Rule 209-B are a violation of an emission standard or limitation within the meaning of the Clean Air Act, and a violation of the Act's new source review performance standards.  42 U.S.C. §7411(e).  The violations are ongoing, and will continue unless remedied by an order from the Court.

106.    Ormat has violated Rule 209-B each and every day since February 8, 2010 through the present.  Each day that Ormat fails to comply with Rule 209-B is a separate violation of the Act.  Each day that Ormat operates MP-I without complying with Rule 209-B is a separate violation of the Act.  Each violation and each day of violation constitutes a separate violation subject to penalties, injunctive and declaratory relief.

### FOURTH CAUSE OF ACTION
**Clean Air Act, 42 U.S.C. §7604(a) - Violation of Rule 209-A**
**(Proposing to Operate, and Operating, the MP-II and PLES-I Facilities Without**
**Required Permits, Including BACT)**
**Declaratory and Injunctive Relief, Civil Penalties**
***By All Plaintiffs Against All Defendants***

107.    All of the above paragraphs are incorporated herein by reference as if set forth

again in full.

108.     MP-II and PLES-I are owned and operated as a single stationary source within the meaning of Rule 209-A and the federal Clean Air Act, with approved VOC emissions limits above the Rule 209-A BACT threshold.  Ormat was required to comply with Rule 209-A prior to operating and/or modifying MP-II and PLES-I.

109.     Ormat has failed to comply with Rule 209-A by failing to apply for and obtain a Rule 209-A ATC permit to construct and operate MP-II and PLES-I under the combined emissions limit, and by failing to install BACT or obtain emissions offsets at either plant.

110.     On or around February 8, 2010, Ormat applied for and GBUAPCD issued PTOs Nos. 583-03-09 (MP-II) and 575-03-09 (PLES-I), approving a combined VOC emissions limit of 500 lbs/day, without requiring the plants to install BACT or obtain emissions offsets. The combined emissions limit resulted in single source VOC emissions at double the 250 lbs/day Rule 209-A threshold.

111.     Under Rule 209-A, a permit for a new or modified source must be denied if it results in an increase in emissions of 250 or more lbs/day of VOCs, unless BACT and emission offsets are required at the source.  Rule 209-A.B.2.a.

112.     Ormat failed to obtain a Rule 209-A permit for MP-II and PLES-I's combined VOC emissions, and as a result, failed to implement BACT and failed to obtain emission offsets prior to commencing combined operations.

113.     Ormat has violated the Clean Air Act and Rule 209-A by proposing to operate, and operating, MP-II and PLES-I without obtaining a permit under Rule 209-A.  Ormat's operations have resulted, and threaten to further result in, a net emissions increase of air contaminants, including VOCs.  This violation has been ongoing since approximately February 8, 2010.

114.     Ormat's violations of Rule 209-A are a violation of an emission standard or limitation within the meaning of the Clean Air Act, and of the Act's new source review performance standards.  42 U.S.C. §7411(e).  The violations are ongoing, and will continue

unless remedied by an order from the Court.

115.    Each day that Ormat fails to comply with Rule 209-A is a separate violation of the Act.  Each day that Ormat operates MP-II and PLES-I without complying with Rule 209-A is a separate violation of the Act.  Each violation and each day of violation constitutes a separate violation subject to penalties, injunctive and declaratory relief.

## FIFTH CAUSE OF ACTION
**Clean Air Act, 42 U.S.C. §7604(a) - Violation of Rule 209-B**
**(Proposing to Operate, and Operating, the MP-II and PLES-I Facilities Without Permits Required By Law, Including BACT)**
**Declaratory and Injunctive Relief, Civil Penalties**
*By All Plaintiffs Against All Defendants*

116.    All of the above paragraphs are incorporated herein by reference as if set forth again in full.

117.    Ormat has violated Rule 209-B by applying for and obtaining PTOs from the Air District to operate the air pollutant emitting equipment at the MP-II and PLES-I facilities without obtaining an ATC permit(s) pursuant to Rule 209-A, and without implementing BACT and without obtaining emissions offsets.  Rule 209-B.A.1.

118.    On or around February 8, 2010, Ormat applied for and GBUAPCD issued PTOs Nos. 583-03-09 (MP-II) and 575-03-09 (PLES-I), which approved a combined emissions limit of 500 lbs/day total VOC emissions.  Ormat failed to install BACT or obtain emissions offsets before it applied for and received the PTOs.

119.    Prior to receiving a PTO and beginning to operate the MP-II and PLES-I facilities, Ormat was required to comply with Rule 209-B, and Clean Air Act §173(a).  42 U.S.C. §7503(a).  Because compliance with Rule 209-B is predicated on compliance Rule 209-A, by failing to comply with Rule 209-A, Ormat also failed to comply with Rule 209-B, and illegally obtained PTOs that fail to comply with Rule 209-B.  Ormat has failed to comply with these requirements since at least February 8, 2010.

120.    Under Clean Air Act §7411(e), it is unlawful to operate MP-II and PLES-I in

violation of new source review standards.  Ormat has operated several pieces of equipment at the MP-II and PLES-I facilities without complying with the Clean Air Act's new source review standards.  Accordingly, Ormat has violated the new source review performance standards established under the Clean Air Act §111(e), 42 U.S.C. §7411(e) Rule 209-B.  Ormat's operations have resulted, and threaten to further result in, a net emissions increase of air contaminants, including VOCs.  This violation has been ongoing each and every day since approximately February 8, 2010.

121.    Ormat's violations of Rule 209-B are a violation of an emission standard or limitation within the meaning of the Clean Air Act, and of the Act's new source review performance standards.  42 U.S.C. §7411(e).  The violations are ongoing, and will continue unless remedied by an order from the Court.

122.    Each day that Ormat fails to comply with Rule 209-B is a separate violation of the Act.  Each day that Ormat operates MP-II and PLES-I without complying with Rule 209-B is a separate violation of the Act.  Each violation and each day of violation constitutes a separate violation subject to penalties, injunctive and declaratory relief.

### SIXTH CAUSE OF ACTION
**Clean Air Act, 42 U.S.C. §7604(a) - Violation of Rule 209-A**
**(Proposing to Construct and Operate M-1 Without Complying with BACT and Emissions Offsets Requirements During Start-Up Operations)**
**Declaratory and Injunctive Relief, Civil Penalties**
***By All Plaintiffs Against All Defendants***

123.    All of the above paragraphs are incorporated herein by reference as if set forth again in full.

124.    Ormat has failed to comply with Rule 209-A by proposing to construct and operate the M-1 replacement plant simultaneously with the MP-I plant for up to two years, without obtaining a Rule 209-A permit and without installing BACT or obtaining emissions offsets at either facility.

125.    MP-I's existing VOC emission limit is 500 lbs/day.  M-I's projected VOC emission limit is 205 lbs/day.  During the two-year start-up period, MP-I and M-1 will have a

total, combined VOC emission limit of 705 lbs/day.

126.     This is almost triple the Rule 209-A emission threshold of 250 lbs/day, triggering the need to obtain a Rule 209-A permit, including BACT and emissions offsets.

127.     MP-I and M-1 will operate as a single stationary source within the meaning of Rule 209-A for up to two years once M-1 is online.  By proposing to construct and operate the M-1 facility without complying with Rule 209-A during the two-year start-up period, Ormat has violated, and continues to violate, Rule 209-A and Clean Air Act §173(a), 42 U.S.C. §7503(a). This violation has been ongoing each and every day since at least July 1, 2011.

128.     Ormat's violations of Rule 209-A are a violation of an emission standard or limitation within the meaning of the Clean Air Act, and of the Act's new source review performance standards.  42 U.S.C. §7411(e).  The violations are ongoing, and will continue unless remedied by an order from the Court.

129.     Each day that Ormat fails to comply with Rule 209-A is a separate violation of the Act.  Each day that Ormat proposes to construct, or constructs, M-1 without complying with Rule 209-A is a separate violation of the Act.  Each violation and each day of violation constitutes a separate violation subject to penalties, injunctive and declaratory relief.

**SEVENTH CAUSE OF ACTION**
**Clean Air Act, 42 U.S.C. §7604(a) - Violation of Rule 209-B**
**(Proposing to Construct and Operate M-1 for a Longer Start-Up Period Than Permitted By Law)**
**Declaratory and Injunctive Relief, Civil Penalties**
*By All Plaintiffs Against All Defendants*

130.     All of the above paragraphs are incorporated herein by reference as if set forth again in full.

131.     Ormat has failed to comply with Rule 209-B by applying for and obtaining permits from the Air District and the County to construct and operate the M-1 replacement plant with a start-up period of more than ninety (90) days.

132.      Rule 209-B allows a maximum of 90 days as a start-up period for simultaneous operation of an existing stationary source and a new stationary source or

replacement.  Rule 209-B, sect. A.3.  Ormat was prohibited by Rule 209-B from applying for and obtaining an ATC and PTO for the M-1 facility that authorized a two-year start-up period, more than eight (8) times the maximum start-up period allowed by Rule 209-B.

133.    As approved, the M-1 plant will allow a startup period of two (2) years, which is 730 days.

134.    By proposing to obtain permits to construct and operate the M-1 facility with a longer start-up period than allowed by Rule 209-B, Ormat has violated, and continues to violate, Rule 209-B and Clean Air Act §173(a), 42 U.S.C. §7503(a).  Additionally, Ormat proposes to construct and operate the M-1 plant without complying with the New Source Review standards contained in the Clean Air Act §173, 42 U.S.C. §7503 and Rule 209-B.  This violation has been ongoing each and every day since at least July 1, 2011.

135.    Ormat's violations of Rule 209-B are a violation of an emission standard or limitation within the meaning of the Clean Air Act, and of the Act's new source review performance standards.  42 U.S.C. §7411(e).  The violations are ongoing, and will continue unless remedied by an order from the Court.

136.    Each day that Ormat fails to comply with Rule 209-B is a separate violation of the Act.  Each day that Ormat proposes to construct, or constructs, M-1 without complying with Rule 209-B is a separate violation of the Act.  Each violation and each day of violation constitutes a separate violation subject to penalties, injunctive and declaratory relief.

## EIGHTH CAUSE OF ACTION
### Clean Air Act, 42 U.S.C. §7604(a) - Violation of Rule 209-A
### (Proposing to Operate, and Operating, the Ormat Complex Without the Permits Required by Law, Including BACT and Emission Offsets)
### Declaratory and Injunctive Relief, Civil Penalties
### *By All Plaintiffs Against All Defendants*

137.    All of the above paragraphs are incorporated herein by reference as if set forth again in full.

138.    Ormat has failed to apply for or obtain an ATC permit pursuant to Rule 209-A, and has failed to install BACT or obtain emissions offsets for the Ormat Complex as a single

stationary source, in violation of Rule 209-A.

139.     Ormat owns and operates the three existing facilities – MP-I, MP-II, and PLES-I – as a single source.  The equipment at each of the individual geothermal plants is dependent upon and affects the processes of the other facilities' equipment; all three facilities rely on the same raw geothermal material and production wells, are located in adjacent properties, share common ownership, share a single control room, have connected pipelines, have the same contract limitations on collective power production, a single reclamation plan, and fall under the same industrial grouping – SIC Code 4911 (Electric Services), and NAICS Code 221119 (Other Electric Power Generation).

140.     These factors make the three Ormat facilities a single stationary source within the meaning of Rule 209-A and the Clean Air Act.

141.     The Ormat Complex has total permitted VOC emissions of 1,000 lbs/day, and will generate up to 1,205 lbs/day of VOC emissions during the M-1 start-up period.  These emissions vastly exceed Rule 209-A's emissions threshold of 250 lbs/day by almost five-fold.

142.     Ormat has violated the Act and Rule 209-A by constructing and operating the Ormat Complex without obtaining permits for this single stationary source in compliance with Rule 209-A, and without installing BACT or obtaining emission offsets.  Ormat's operations have resulted, and threaten to further result, in a net emission increase of air contaminants, including VOCs, above levels allows by the Act.  This violation has been ongoing each and every day since approximately January 1, 1989. Ormat is subject to penalties and injunctive relief for this violations each and every day since July 8, 2009.

143.     Ormat's violations of Rule 209-A are a violation of an emission standard or limitation within the meaning of the Clean Air Act, and a violation of the Act's new source review performance standards.  42 U.S.C. §7411(e).  The violations are ongoing, and will continue unless remedied by an order from the Court.

144.     Each day that Ormat fails to comply with Rule 209-A is a separate violation of the Act.  Each day that Ormat operates the Ormat Complex plants without complying with Rule

209-A is a separate violation of the Act.  Each violation and each day of violation constitutes a separate violation subject to penalties, injunctive and declaratory relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

1.      A declaration by this Court that Ormat has violated the Clean Air Act and the provisions of the California State Implementation Plan (SIP) known as Rule 209-A and Rule 209-B.

2.      A preliminary and permanent injunction, including a temporary restraining order, to require Ormat to cease and desist from any further construction or operation of the Ormat Complex and M-1 unless and until it fully complies with Rule 209-A and 209-B.

3.      A preliminary and permanent injunction requiring Ormat to install Best Available Control Technology on its plants known as M-1, MP-I, MP-II, and PLES-I.

4.      A preliminary and permanent injunction requiring Ormat to obtain emission offsets to offset emissions generated by the plants known as M-1, MP-I, MP-II, and PLES-I.

5.      An Order requiring the Defendants to pay civil penalties of $37,500 per day for each violation of Rule 209-A and 209-B pursuant to Clean Air Act §304(a), 42 U.S.C. §7604(a).

6.      An award of $100,000 for beneficial mitigation projects to enhance the public health or environment in the community near the Ormat Complex, M-1, and/or the GBV Air Basin pursuant to section 304(g) of the federal Clean Air Act.  Such an award would mitigate, to some degree, the harm to Plaintiffs and their members living, working, and recreating near the Ormat Complex and M-1 caused by Defendants' violations of the Clean Air Act.  Plaintiffs respectfully request that the Court consult with the US EPA Administrator, or her designee, in selecting such projects.

7.      An Order requiring Ormat to take other appropriate actions to remedy, mitigate, or offset the harm to public health and the environment caused by the violations of the Act and District Rules alleged above.

8.      An award to Plaintiffs of its costs of litigation, including reasonable attorneys' and

expert witness fees, as authorized by section 304(d) of the Clean Air Act, 42 U.S.C. §7604(d) and/or any other applicable provision(s) of state and/or federal law.

9.     All such other relief as this Court deems appropriate.


Dated:  July 8, 2014                          Respectfully Submitted,

                                              LOZEAU|DRURY LLP


                                               _/s/ Richard T. Drury_____
                                              Richard T. Drury
                                              Counsel for Plaintiffs

# EXHIBIT A



**LOZEAU DRURY** LLP

T 510.836.4200   |   410 12th Street, Suite 250   |   www.lozeaudrury.com
F 510.836.4205   |   Oakland, Ca 94607   |   richard@lozeaudrury.com

**BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

May 7, 2014

Mr. John Bernardy, Plant Manager
Mammoth Pacific Geothermal Power
   Plants MP-I, MP-II/G2, PLES-I/G3
Mammoth Pacific, L.P.
P.O. Box 1584
Mammoth Lakes, CA 93546

Mrs. Yehudit Bronicki, President
Ormat Nevada, Inc.
c/o TRAC - THE REGISTERED AGENT
COMPANY
Registered Agent for Service of Process
on Ormat Nevada, Inc.
914 S St,
Sacramento, CA 95811

Mr. John Bernardy, Plant Manager
Mammoth Pacific Geothermal Power
   Plants MP-I, MP-II/G2, PLES-I/G3
Mammoth Pacific, L.P.
Jct Old Hwy 395
Mammoth Lakes, CA 93546

Mr. Yoram Bronicki, President,Director and
   Chief Operating Officer
Mrs. Yehudit Bronicki, Director and Chief
   Executive Officer
Mr. Gillon Back, Chairman of the Board of
Directors
Ormat Technologies, Inc.
c/o TRAC - THE REGISTERED AGENT
COMPANY
800 North State Street, Suite 402
Dover, DE 19901

**Re:    Notice of Intent to File Suit Under the Clean Air Act**

Dear Mr. Bernardy, Mr. Bronicki, Mrs. Bronicki, Mr. Back:

Section 304(a) of the Federal Clean Air Act (the "Act") allows any person to bring a lawsuit in federal court against any person who violates an emission standard or limitation of the Act, 42 U.S.C. §7604(a), and against any person who proposes to construct or constructs any new or modified stationary source without a permit required under part C of subchapter I (Prevention of Significant Deterioration of Air Quality) and part D of subchapter I (Plan Requirements for Nonattainment Areas) of the Clean Air Act.  42 USC §7604(a)(3).  Section 304(b)(1) of the Act, requires that citizens give notice of any citizen suit before filing suit.  42 U.S.C. § 7604(b)(1).  Accordingly, Bishop, California residents Russell Covington, Robert A. Moore, Randy Sipes, and Randal Sipes ("Bishop Residents"), and Global Community Monitor, a California non-profit environmental organization ("GCM"), and Laborers International Union of North

Mr. Bernardy, Mr. Bronicki, Mrs. Bronicki, Mr. Back
Notice of Intent to File Suit Under the Clean Air Act
May 7, 2014

America, Local Union 783, and its members living in Mono County ("LiUNA") (collectively, "Noticing Parties") hereby provide notice, pursuant to section 304(b)(1) of the Act, 42 U.S.C. § 7604(b)(1), to the following persons in their capacities identified below:

- Mammoth Pacific Limited Partnership ("MPLP"), as the owner and operator of the facility(ies) that is (are) in violation of the Act, and as the violator of an "emission standard or limitation" under the Act, within the meaning of Section 304(a)(1) of the Act, 42 U.S.C. §7604(a)(1);

- Ormat Nevada, Inc. ("Ormat Nevada"), as the owner and operator of the facility(ies) that is (are) in violation of the Act, and as the violator of an "emission standard or limitation" under the Act, within the meaning of Section 304(a)(1) of the Act, 42 U.S.C. §7604(a)(1);

- Ormat Technologies, Inc. ("Ormat Technologies"), as the owner and operator of the facility(ies) that is (are) in violation of the Act, and as the violator of an "emission standard or limitation" under the Act, within the meaning of Section 304(a)(1) of the Act, 42 U.S.C. §7604(a)(1) (collectively, Ormat Technologies, MPLP and Ormat Nevada shall be referred to as "Ormat");

- United States Environmental Protection Agency ("EPA"); and

- State of California, as the state in which the violation occurred and will continue to occur.

The Noticing Parties intend to bring suit under the Act, after expiration of sixty (60) days from the date of this letter.  The lawsuit will be brought in the United States District Court for the Eastern District of California, against Ormat, for its violations of the Act, as more specifically stated below.

## I.  Facility Background.

### A. Casa Diablo Geothermal Development.

The Casa Diablo geothermal development complex ("Casa Diablo Geothermal Development") is a geothermal development project located in the Mono-Long Valley Known Geothermal Resource Area ("KGRA").  The Casa Diablo Geothermal Development consists of three existing geothermal plants and one proposed plant located two miles east of Mammoth Lakes, California, within the Great Basin Valleys ("GBV") air basin which encompasses Mono, Inyo and Alpine Counties, and specifically

2

Mr. Bernardy, Mr. Bronicki, Mrs. Bronicki, Mr. Back
Notice of Intent to File Suit Under the Clean Air Act
May 7, 2014

within the Town of Mammoth lakes sub-basin of the GBV air basin.[1]  Ormat owns and operates all existing and planned geothermal plants at the Casa Diablo Geothermal Development.

The existing facilities include:

1. Mammoth Pacific I Geothermal Facility ("MP-I"), a 14 megawatt ("MW") facility which commenced operation in 1984;
2. Mammoth Pacific II Geothermal Facility, also known as "G2" ("MP-II"), a 15 MW facility that commenced operations in 1990 and,
3. Pacific Lighting Energy Systems Unit I Geothermal Development Project, also known as "G3" ("PLES-I"), another 15 MW facilities which commenced operations in 1990 (collectively, MP-I, MP-II, and PLES-I shall be referred to as the "Ormat Complex").

The facilities that make up the existing Ormat Complex are located on adjacent lands, share a single geothermal wellfield of three wells, a common control room, common pipes which carry geothermal fluid to and from the wellfield, and other common facilities for economy and operational efficiencies.

The facilities emit volatile organic compounds ("VOCs") in the form of fugitive motive fluid emissions of either n-pentane or isobutene, through valves, flanges, seals, and other unsealed joints in facility equipment.  Both isobutane and n-pentane are considered reactive organic gases ("ROGs") and VOCs (collectively, "VOCs") under respective state and federal air regulations.  VOCs combine with nitrogen oxides ("NOx") to form ozone in the atmosphere.  Ozone is a criteria air pollutant for which there is a national ambient air quality standard ("NAAQS").

According to the United States Environmental Protection Agency:

Breathing ground-level ozone can result in a number of health effects that are observed in broad segments of the population. Some of these effects include:

Induction of respiratory symptoms
Decrements in lung function
Inflammation of airways

Respiratory symptoms can include:

---

[1] A fourth plant is proposed for the Casa Diablo Complex, Casa Diablo IV ("CD–4"), a new 33 MW binary power plant and pipeline system on Inyo National Forest lands and adjacent private lands, consisting of up to 16 new geothermal wells, piping connecting its production wells to the power plant, and a new substation that would be connected to the existing SCE Casa Diablo Substation with a transmission line.

Mr. Bernardy, Mr. Bronicki, Mrs. Bronicki, Mr. Back
Notice of Intent to File Suit Under the Clean Air Act
May 7, 2014

Coughing
Throat irritation
Pain, burning, or discomfort in the chest when taking a deep breath
Chest tightness, wheezing, or shortness of breath

In addition to these effects, evidence from observational studies strongly indicates that higher daily ozone concentrations are associated with increased asthma attacks, increased hospital admissions, increased daily mortality, and other markers of morbidity.  The consistency and coherence of the evidence for effects upon asthmatics suggests that ozone can make asthma symptoms worse and can increase sensitivity to asthma triggers.  (http://www.epa.gov/apti/ozonehealth/population.html)

The Great Basin Air District fails to meet state ozone standards, and has adopted rules and regulations to reduce the emission of ozone-forming pollutants such as VOCs.

**1. Mammoth Pacific I Geothermal Facility.**

MP-I was the first geothermal plant at the Ormat Complex, commencing operation in 1984.  It includes a 14 megawatt ("MW") binary power plant which draws geothermal fluid from the shared geothermal wellfield, as well as production and injection fluid pipelines, and ancillary facilities.  MP-I is located on private land owned by Ormat Nevada.

The MP-I facility consists of two units – MP-I West and MP-I East.  As a whole, the existing MP-I facility emits VOCs at a rate of approximately 500 lbs/day (91.3 tons/year).  The MP-I facility has been operating at about half of its permitted capacity since at least 2010.

GBUAPCD issued the original PTOs for the MP-I facility on or around May 16, 1988.  MP-I was originally permitted by GBUAPCD as two facilities under two separate PTOs.  PTO No. 325 was issued on May 16, 1988 for MP-I West (aka "G1 unit 100"), a 5 MWe power plant.  PTO No. 328 was issued on May 16, 1988 for MP-I East (aka "G1 unit 200"), a 5 MWe power plant.  On or around October 2, 1991, a single permit to operate was issued for the combined MP-I facility, PTO No. 601.

On or around February 8, 2010, GBUAPCD issued PTOs Nos. 602-03-09 and 601-03-09, which approved a combined emissions limit for MP-I East and MP-I West of 500 lbs/day total VOC emissions, and changed the names of the facilities.  MP-I West was renamed "G1 unit 100," and MP-1 East was renamed "G1 unit 200."

The combined emissions limit resulted in an emission level from the single MP-I facility in excess of 250 lbs/day of VOCs.  This emission level required MP-I to

Mr. Bernardy, Mr. Bronicki, Mrs. Bronicki, Mr. Back
Notice of Intent to File Suit Under the Clean Air Act
May 7, 2014

implement best available control technology ("BACT") and require emissions offsets pursuant to Rule 209-A.

Ormat failed to apply for or obtain an ATC permit pursuant to Rule 209-A.  On or around May 1, 2013, GBUAPCD issued ATC Permit Nos. 601-04-13 and 602-04-73, which authorized facility equipment replacements to upgrade turbines and condensers, and approved a change in motive fluid.  None of these permits implement BACT for MP-I.  The MP-I air permits similarly do not treat the Ormat Complex as a single stationary source, and fail to require compliance with GBUAPCD Rules 209-A and 209-B for the Ormat Complex as a single source.

## 2. M-1.

In November 2012, the County approved the M-1 replacement plant, which will generate 18.8 MW of electricity, and will replace the 14 MW MP-I.  The County's environmental impact report ("EIR") prepared for the M-1 Replacement Project admits that, during M-1's 30-year operations, the M-I plant will emit at least 205 lbs/day of VOCs in the form of fugitive n-pentane emissions, an ozone precursor, through valves, flanges, seals, and other unsealed joints in facility equipment.  During the two-year startup phase for the M-1 plant, both M-1 and MP-I will operate simultaneously, resulting in combined net fugitive VOC emissions of approximately 705 lbs/day (MP-I's 500 lbs/day plus M-1's 205 lbs/day).

## 3. Mammoth Pacific II Geothermal Facility.

The MP–II facility is also located on Ormat's private lands, just 1,200 feet east–northeast of the MP–I facility and directly adjacent to it.  MP-II shares production and injection well fields with MP-I, such that geothermal fluid produced from the production wells can be conveyed to either of the two plants, and spent (cooled) geothermal fluid discharged from either of the two plants is injected into any of the available injection wells.  MP-II operates under a Conditional Use Permit ("CUP") from the County.

On or around July 26, 1988, GBUAPCD issued the original ATCs for the MP-II facility, ATC Nos. 329 and 583.  The original PTO for MP-II was issued in 1991

## 4. PLES I Geothermal Development Project

PLES–I is a 15MW power plant which is a "twin" to the MP–II facility.  PLES-I and its associated geothermal production and injection wells are located on adjacent public lands administered by the U.S. Forest Service.  MP-II and PLES-I were permitted simultaneously by the Air District, but were issued separate permits.

In 1989, GBUAPCD issued the original ATCs for PLES-I, ATCs Nos. 279 and 575. The original PTO for PLES-I was issued in 1991.  On or around February 8, 2010,

Mr. Bernardy, Mr. Bronicki, Mrs. Bronicki, Mr. Back
Notice of Intent to File Suit Under the Clean Air Act
May 7, 2014

GBUAPCD issued PTOs Nos. 583-03-09 (MP-II) and 575-03-09 (PLES-I), approving a combined emissions limit for MP-II and PLES-I of 500 lbs/day total VOC emissions from combined point and fugitive isobutene emissions.

### 5. Connected Operations.

Ormat owns and operates the three existing geothermal facilities – MP-I, MP-II, and PLES-I – as a single source.  The operation of the equipment of all three facilities is dependent upon and affects the process of the other facilities' equipment.  Additionally, the operation of all three facilities relies on the same raw geothermal material extracted from, and injected into, the same underlying resource.  In particular, MP-I, MP-II, and PLES-I rely on the same production wells and same underlying water resources, use a single control room and other shared facilities, have connected pipelines, have the same contract limitations on collective power production, have a single reclamation plan, and are operated by the same company, Ormat.  The three facilities also fall under the same industrial grouping – SIC Code 4911 (Electric Services), and NAICS Code 221119 (Other Electric Power Generation).

The existing production and injection wells of the MPLP Ormat Complex are operated as a single system. Hot geothermal fluid from the production wells are routed to one or more of the existing power plants, where heat is extracted by the binary process, then the cooled fluid is injected into one or more of the injection wells.  Additionally, the three facilities share a single combined physical pumping capacity of about 6,900,000 pounds per hour ("pph"). This physical pumping limit will not change with the M-I Replacement Plant Project.  Any increase in flow to the new M-1 plant over the existing flow to the MP-I plant must be offset by directly corresponding reductions in flow to the MP-II and/or PLES-I facilities.

The facilities have a shared pipeline system.  The existing Ormat Complex pipeline system will deliver the geothermal fluid to and from the new M–1 plant site. The existing production pipeline system passes immediately south of the proposed M–1 plant site. The proposed M–1 OEC unit would be connected to the existing Ormat Complex pipelines via new, above ground, production and injection fluid interconnection pipelines.  Finally, the isobutene used at the new M-1 facility will be transferred to either the MP–II or PLES–I plant sites as makeup motive fluid for those facilities.

## II. Legal Background.

### A. The Clean Air Act.

The Clean Air Act ("Act" or "CAA"), 42 USC § 7401 et seq., establishes ambient air quality standards and permit requirements for both stationary and mobile sources.  Under the Act, the United States Environmental Protection Agency ("EPA") has set standards known as National Ambient Air Quality Standards ("NAAQS") for pollutants

Mr. Bernardy, Mr. Bronicki, Mrs. Bronicki, Mr. Back
Notice of Intent to File Suit Under the Clean Air Act
May 7, 2014

considered to be key indicators of air quality, including ozone.  Local air districts are free to adopt appropriate air quality measures to achieve and maintain the NAAQS, which measures become enforceable under the Act. See, e.g., Sections 113(b)(1), 304(a)(2) and 304(f) of the Act, 42 U.S.C. §§ 7413(b)(1), 7604(a)(2) & (f); *Her Majesty the Queen v. Detroit*, 874 F.2d 332, 335 (6th Cir. 1989); *American Lung Association v. Kean*, 871 F.2d 319, 322 (3d Cir. 1989); *United States v. Congoleum Corp.*, 635 F. Supp. 174, 177 (E.D. Pa. 1986).  VOCs are precursors to ozone formation in the atmosphere.

The Clean Air Act authorizes citizen suits against any person who has violated or is in violation of an "emission standard or limitation."  Section 304 of the Act, 42 U.S.C. § 7604(a)(1).  The term "emission standard or limitation" is broadly defined to include "a schedule or timetable of compliance, emission limitation, standard of performance or emission standard;" and "any other standard, limitation, or schedule established under any permit issued pursuant to title V [42 USCS §§ 7661 et seq.] or under any applicable State implementation plan approved by the Administrator, any permit term or condition, and any requirement to obtain a permit as a condition of operations."  42 U.S.C. § 7604(f).

## B.  GBUAPCD Rule 209-A.

GBUAPCD Rule 209-A prohibits the issuance of an authority to construct ("ATC") for any new stationary source or modification to any portion thereof, unless the facility complies with all provisions of Rule 209-A, including but not limited to implementing best available control technology ("BACT")[2] and requiring emissions offsets, and unless the facility complies with all other applicable District rules and regulations and with Sections 44300 (et. seq.) of the California Health and Safety Code.  GBUAPCD Rule 209-A.A.1.

GBUAPCD Rule 209-A was adopted by GBUAPCD on August 20, 1979, and federally approved by the EPA as part of California's SIP.  47 Fed. Reg. 26380 (June 18, 1982).  Thus, GBUAPCD Rule 209-A is part of the Clean Air Act, and has been federally enforceable by citizen suit for all dates relevant to this matter. See, e.g.,

---

[2] "Best Available Control Technology (BACT)" is defined as the more stringent of:
a. The most effective emissions control technique which has been achieved in practice, for such category or class of source; or
b. Any other emissions control technique found, after public hearing, by the Air Pollution Control Officer or the Air Resources Board to be
technologically feasible and cost/effective for such class or category of sources or for a specific source; or
c. The most effective emission limitation which the EPA certifies is contained in the implementation plan of any State approved under the Clean Air Act for such class or category or source, unless the owner or operator of the proposed source demonstrates that such limitations are not achievable. Rule 209-A.F.1

Mr. Bernardy, Mr. Bronicki, Mrs. Bronicki, Mr. Back
Notice of Intent to File Suit Under the Clean Air Act
May 7, 2014

Sections 113(b)(1), 304(a)(2) and 304(f) of the Act, 42 U.S.C. §§ 7413(b)(1), 7604(a)(2) & (f); *Her Majesty the Queen v. Detroit*, 874 F.2d 332, 335 (6th Cir. 1989).

GBUAPCD Rule 209-A defines "Stationary Source" as follows:

"Stationary Source" means any aggregation of air- contaminant-emitting equipment which includes any structure, building, facility, equipment, installation or operation (or aggregation thereof) which is located on one or more bordering properties within the District and which is owned, operated, or under shared entitlement to use by the same person. Items of air-contaminant-emitting equipment shall be considered aggregated into the same stationary source, and items of non-air-contaminant-emitting equipment shall be considered associated with air-contaminant-emitting equipment only if:
a. The operation of each item of equipment is dependent upon, or affects the process of, the other; and
b. The operation of all such items of equipment involves a common raw material or product.   GBUAPCD Rule 209-A.F.3.

The federal Clean Air Act contains a similar definition of the term "stationary source."  See e.g. 40 CFR § 52.21(b)(1); 44 Fed. Reg. 51932 (Sept. 5, 1979); 45 Fed. Reg. 52694 (Aug. 7, 1980).

## C.  GBUAPCD Rule 209-B.

GBUAPCD Rule 209-B prohibits the issuance of a permit to operate for any new or modified stationary source or any portion thereof to which Rule 209-A applies unless the owner or operator of the source has obtained ATC granted pursuant to Rule 209-A; the Air Pollution Control Officer ("APCO") has determined that the source and any sources which provide offsets have been constructed and/or modified in compliance with GBUAPCD Rule 210 (Conditional Approval); the APCO has determined that any offsets required as a condition of the authority to construct will commence at the time of or prior to initial operations; and the APCO has determined that all conditions specified in the authority to construct have been or will likely be complied with by any dates specified.  GBUAPCD Rule 209-B.A.  GBUAPCD Rule 209-B was adopted by GBUAPCD on August 20, 1979, and federally approved by the EPA as part of California's SIP.  47 Fed. Reg. 26380 (June 18, 1982).  Thus, GBUAPCD Rule 209-B is part of the Clean Air Act and violations of the rule are federally enforceable in a citizen suit enforcement action.

Mr. Bernardy, Mr. Bronicki, Mrs. Bronicki, Mr. Back
Notice of Intent to File Suit Under the Clean Air Act
May 7, 2014

### III. **Ormat's Violations of the Clean Air Act.**

#### A. **Ormat Has Violated Clean Air Act §§ 304(a)(1) and 304(a)(3), 42 USC §§ 7604(a)(1) and 7604(a)(3) and GBUAPCD Rule 209-A by Proposing to Operate, and by Operating, the MP-I Facility Without the Permits Required By Law, Including BACT.**

##### 1. **Ormat Has Violated the Clean Air Act and GBUAPCD Rule 209-A by Proposing to Modify, and by Modifying, MP-I Without a Valid Authority to Construct Permit Pursuant to GBUAPCD Rule 209-A, and Without BACT.**

Noticing Parties hereby give notice to Ormat that Noticing Parties intend to sue Ormat under Clean Air Act §304(a)(1) and 304(a)(3), 42 U.S.C. §7604(a)(1) and 7604(a)(3), Clean Air Act §111(e), 42 U.S.C. §7411(e), and GBUAPCD Rule 209-A for proposing to modify, and modifying, a stationary source without complying with the requirements of the Clean Air Act and GBUAPCD Rule 209-A.  Rule 209-A defines "modification" as follows:

> "Modification" means any physical change in, change in method of operation of, or addition to an existing stationary source, except that routine maintenance or repair shall not be considered to be a physical change. A change in the method of operation, unless previously limited by an enforceable permit condition, shall not include:
> a. An increase in the production rate, if such increase does not exceed the operating design capacity of the source.
> b. An increase in the hours of operation.
> c. Change in ownership of a source.  GBUAPCD Rule 209-A.F.2.

MP-I is a modified stationary source within the meaning of Rule 209-A and the federal Clean Air Act.  On or around May 1, 2013, Ormat applied for, and GBUAPCD issued, ATC Permit Nos. 601-04-13 and 602-04-73, which expressly authorized "modification" of MP-I facility equipment to upgrade facility turbines and condensers, and approved a change in motive fluid.  These activities constituted a stationary source modification within the meaning of Rule 209-A and the federal Clean Air Act.

At the time Ormat applied for and obtained ATC Permit Nos. 601-04-13 and 602-04-73, MP-I was operating under a combined VOC emissions limit of 500 lbs/day, which is double the Rule 209-A emissions threshold for requiring BACT and offsets.  See PTOs Nos. 602-03-09 and 601-03-09.  This approved emissions limit constitutes the total facility emissions for purposes of applying Rule 209-A.  Rule 209-A.C.1 (calculation of emissions).  MP-I was therefore subject to Rule 209-A requirements at the time Ormat applied for and obtained ATC Permit Nos. 601-04-13 and 602-04-73.  Ormat failed to comply with GBUAPCD Rule 209-A when it applied for and obtained ATC

9

Mr. Bernardy, Mr. Bronicki, Mrs. Bronicki, Mr. Back
Notice of Intent to File Suit Under the Clean Air Act
May 7, 2014

Permit Nos. 601-04-13 and 602-04-73 by failing to install BACT at the MP-I facility, failing to require emissions offsets, and failing to obtain an ATC permit in compliance with the requirements of Rule 209-A.

Ormat has operated MP-I without without complying with Rule 209-A since at least May 1, 2013.  Ormat's operations have resulted, and threaten to further result, in a net emission increase of precursors to criteria air pollutants above levels allowed by federal law.

Additionally, Ormat violated Rule 209-A by applying for and obtaining ATC permits to modify MP-I while it owned and operated other stationary sources within California which were out of compliance with applicable Clean Air Act and SIP emission limitations and standards.  Rule 209-A.A.2.  As discussed in Sections C and D below, at the time Ormat applied for and obtained ATC Permit Nos. 601-04-13 and 602-04-73, it was operating MP-II and PLES-I as a stationary source under a combined VOC emissions limit of 500 lbs/day without employing BACT and other Rule 209-A requirements.  Ormat was also operating the Ormat Complex as a single stationary source without employing BACT and other Rule 209-A requirements.  Thus, Ormat has failed to comply with Rule 209-A's requirement that its other facilities be in compliance with Clean Air Act requirements *before* it may obtain any new ATCs.  This violation has been ongoing since at least May 1, 2013.

To comply with Rule 209-A and the Clean Air Act, Ormat must apply to GBUAPCD for an ATC that requires installation of BACT, requires purchase of emission offsets, and complies with all other Rule 209-A requirements.  Accordingly, Ormat has violated the new source review performance standards established under the Clean Air Act §111(e), 42 U.S.C. §7411(e) and GBUAPCD Rule 209-A.

Noticing Parties intend to sue Ormat for violating the Clean Air Act §111(e), 42 U.S.C. §7411(e) and GBUAPCD Rule 209-A, on each of the following days:  May 1, 2013 through the present date, and each day until the violation is remedied.

Each day that Ormat continues to operate MP-I and/or any MP-I equipment in violation of the Clean Air Act §111(e), 42 U.S.C. §7411(e) and GBUAPCD Rule 209-A, constitutes a separate violation of the Clean Air Act for which Noticing Parties plan to sue Ormat.  Noticing Parties intend to seek injunctive relief from the court to require Ormat to comply with the Clean Air Act provisions being violated and to ask the court to impose civil penalties for each individual violation of the Clean Air Act, up to a maximum of $37,500 per day, per violation.

Mr. Bernardy, Mr. Bronicki, Mrs. Bronicki, Mr. Back
Notice of Intent to File Suit Under the Clean Air Act
May 7, 2014

      **2.**   **Ormat has Violated the Clean Air Act and GBUAPCD Rule 209-A by Proposing to Operate, and Operating, MP-I Above the Rule 209-A Emissions Threshold Without Complying With GBUAPCD Rule 209-A and Without Obtaining an Authority to Construct Permit.**

      Noticing Parties hereby give notice to Ormat that Noticing Parties intend to sue Ormat under Clean Air Act §304(a)(1) and 304(a)(3), 42 U.S.C. §7604(a)(1) and 7604(a)(3), Clean Air Act §111(e), 42 U.S.C. §7411(e), and GBUAPCD Rule 209-A for operating, and proposing to operate, a stationary source without complying with the requirements of the Clean Air Act.  See also 42 U.S.C. §7503.

      MP-I is owned and operated as a stationary source within the meaning of Rule 209-A and the federal Clean Air Act, but Ormat has failed to apply for or obtain an ATC permit for MP-I pursuant to Rule 209-A.  On or around February 8, 2010, GBUAPCD issued PTOs Nos. 602-03-09 and 601-03-09, which approved a combined emissions limit for MP-I East and MP-I West of 500 lbs/day total VOC emissions, and changed the names of the facilities.  MP-I West was renamed "G1 unit 100," and MP-1 East was renamed "G1 unit 200."  The combined emissions limit resulted in a single source with emissions in excess of 250 lbs/day of VOCs, thus making MP-I subject to Rule 209-A.  Rule 209-A.B.2.a, C.1.  The existing MP-I facility has a potential to emit VOCs at a rate of approximately 500 lbs/day.

      Under Rule 209-A, Ormat was required to implement BACT and emissions offsets for MP-I once its emissions limit exceeded 250 lbs/day.  At 500 lbs/day, MP-I's emissions limit is double the Rule 209-A threshold for requiring both BACT and offsets.  Under GBUAPCD Rule 209-A, a permit for a new or modified source must be denied if it results in an increase in emissions of, inter alia, VOCs of 250 or more lbs/day.  GBUAPCD Rule 209-A.B.2.a.  An approved emissions limitation is used as the facility's emissions rate for purposes of applying Rule 209-A.  Rule 209-A.C.1.

      Ormat has failed to obtain an ATC permit pursuant to Rule 209-A for the MP-I facility, and has therefore failed to install BACT or obtain required emission offsets.  Ormat is currently operating the MP-I facility at an emissions rate of 500 lbs/day without employing BACT or emissions offsets.  Thus, Ormat has violated the Clean Air Act and GBUAPCD Rule 209-A by proposing to operate, and operating, MP-I without an ATC permit in compliance with Rule 209-A.  Ormat's operations have resulted, and threaten to further result, in emissions above levels allowed by federal law, including VOCs, precursors to the criteria air pollutant ozone.  This violation has been ongoing since approximately February 8, 2010.

      Also, Ormat violated Rule 209-A by applying for and obtaining permits to operate MP-I while concurrently owning and operating other stationary sources within California which were out of compliance with applicable Clean Air Act and SIP emission limitations and standards.  Rule 209-A.A.2.  As discussed in Sections C and D below, at the time

Mr. Bernardy, Mr. Bronicki, Mrs. Bronicki, Mr. Back
Notice of Intent to File Suit Under the Clean Air Act
May 7, 2014

Ormat applied for and obtained ATC Permit Nos. 601-04-13 and 602-04-73, it was operating MP-II and PLES-I as a stationary source under a combined VOC emissions limit of 500 lbs/day without employing BACT and other Rule 209-A requirements. Ormat was also operating the Ormat Complex as a single stationary source, without employing BACT or otherwise obtaining a Rule 209-A permit. Thus, Ormat has failed to comply with Rule 209-A's threshold requirement that its other facilities be in compliance Clean Air Act requirements *before* it may obtain any new ATCs.  This violation has been ongoing since at least February 8, 2010.

Prior to receiving a permit to operate and beginning to operate MP-I as a single stationary source with an emissions limit of 500 lbs/day of VOCs, Ormat was required to comply with GBUAPCD Rule 209-A and Clean Air Act §173(a), 42 U.S.C. §7503(a), and to apply for and obtain an ATC permit pursuant to Rule 209-A.  Ormat has failed to comply with these requirements since at least February 8, 2010.

To comply with Rule 209-A and the Clean Air Act, Ormat must apply to GBUAPCD for an ATC for MP-I as a single stationary source.  Under Clean Air Act §7411(e), it is unlawful to operate MP-I in violation of these requirements.  Ormat has operated MP-I without complying with Rule 209-A and the Clean Air Act. Accordingly, Ormat has violated the new source review performance standards established under the Clean Air Act §111(e), 42 U.S.C. §7411(e) and GBUAPCD Rule 209-A.

Noticing Parties intend to sue Ormat for violating the Clean Air Act §111(e), 42 U.S.C. §7411(e) and GBUAPCD Rule 209-A, on each of the following days:  February 8, 2010 through the present, and each day until the violations are remedied.

Each day that Ormat continues to operate MP-I and/or any MP-I equipment in violation of the Clean Air Act §111(e), 42 U.S.C. §7411(e) and GBUAPCD Rule 209-A, constitutes a separate violation of the Clean Air Act for which Noticing Parties plan to sue Ormat.  Noticing Parties intend to seek injunctive relief from the court to require Ormat to comply with the Clean Air Act provisions being violated and to ask the court to impose civil penalties for each individual violation of the Clean Air Act, up to a maximum of $37,500 per day, per violation

**B. Ormat Has Violated Clean Air Act §§ 304(a)(1) and (3), 42 USC §§ 7604(a)(1) and (3) and GBUAPCD Rule 209-B By Proposing to Operate, and Operating, the MP-I Facility Without the Permits Required By Law, Including BACT.**

Noticing Parties hereby give notice to Ormat that Noticing Parties intend to sue Ormat under Clean Air Act §304(a)(1) and (3), 42 U.S.C. §7604(a)(1) and (3), Clean Air Act §111(e), 42 U.S.C. §7411(e), and GBUAPCD Rule 209-B for operating, and proposing to operate, a stationary source without complying with the requirements of the Clean Air Act.  See Clean Air Act §173, 42 U.S.C. §7503.

12

Mr. Bernardy, Mr. Bronicki, Mrs. Bronicki, Mr. Back
Notice of Intent to File Suit Under the Clean Air Act
May 7, 2014

Ormat has failed to comply with Rule 209-B by applying for and obtaining PTOs from the Air District to operate the air pollutant emitting equipment at the MP-I facility without first obtaining an ATC permit(s) pursuant to Rule 209-A.  Rule 209-B.A.1. PTOs Nos. 602-03-09 and 601-03-09, which approved a combined emissions limit for MP-I East and MP-I West of 500 lbs/day total VOC emissions, fail to comply with Rule 209-B because Ormat failed to apply for or obtain an ATC permit pursuant to Rule 209-A, and failing to implement BACT and emissions offsets, *before* it applied for and receiving a PTO pursuant to Rule 209-B.

Prior to receiving a PTO and beginning to operate the MP-I facility, Ormat was required to comply with Rule 209-B, and Clean Air Act §173(a).  42 U.S.C. §7503(a). Because compliance with Rule 209-B is predicated on compliance with Rule 209-A, by failing to comply with Rule 209-A, Ormat also failed to comply with Rule 209-B.  Ormat has failed to comply with these requirements since at least February 8, 2010.  To comply with Rule 209-B and the Clean Air Act, Ormat must first apply to GBUAPCD for an ATC pursuant to Rule 209-A, and must implement BACT, emissions offsets, and any other conditions required by Rule 209-A, before obtaining a PTO to operate MP-I at an emissions level that is above the Rule 209-A threshold.  Only after Ormat has obtained a valid Rule 209-A permit for MP-I may it apply for and obtain a PTO pursuant to Rule 209-B.

Under Clean Air Act §7411(e), it is unlawful to operate MP-I in violation of new source review standards. Ormat has operated several pieces of equipment at the MP-I facility without complying with the Clean Air Act's new source review standards since at least February 8, 2010.  Accordingly, Ormat has violated the new source review performance standards established under the Clean Air Act §111(e), 42 U.S.C. §7411(e) and GBUAPCD Rule 209-B.

Noticing Parties intend to sue Ormat for violating the Clean Air Act §111(e), 42 U.S.C. §7411(e) and GBUAPCD Rule 209-B, on each of the following days:  February 8, 2010 through the present, and every day until Ormat comes into compliance with the law.

Each day that Ormat continues to operate MP-I and/or any equipment at the MP-I facility in violation of the Clean Air Act §111(e), 42 U.S.C. §7411(e) and GBUAPCD Rule 209-B, constitutes a separate violation of the Clean Air Act for which Noticing Parties plan to sue Ormat.  Noticing Parties intend to seek injunctive relief from the court to require Ormat to comply with the Clean Air Act provisions being violated and to ask the court to impose civil penalties for each individual violation of the Clean Air Act, up to a maximum of $37,500 per day, per violation.

Mr. Bernardy, Mr. Bronicki, Mrs. Bronicki, Mr. Back
Notice of Intent to File Suit Under the Clean Air Act
May 7, 2014

**C. Ormat Has Violated Clean Air Act §§ 304(a)(1) and 304(a)(3), 42 USC §§ 7604(a)(1) and 7604(a)(3) and GBUAPCD Rule 209-A By Proposing to Operate, and Operating, the MP-II and PLES-I Facilities Without the Permits Required By Law, Including BACT.**

Noticing Parties hereby give notice to Ormat that Noticing Parties intend to sue Ormat under Clean Air Act §304(a)(1) and 304(a)(3), 42 U.S.C. §7604(a)(1) and 7604(a)(3), Clean Air Act §111(e), 42 U.S.C. §7411(e), and GBUAPCD Rule 209-A for operating, and proposing to operate, a stationary source without complying with the requirements of the Clean Air Act. See Clean Air Act §173, 42 U.S.C. §7503.

MP-II and PLES-I are owned and operated as a stationary source within the meaning of Rule 209-A and the federal Clean Air Act, with emissions above the Rule 209-A threshold. Ormat must therefore comply with Rule 209-A prior to operating and/or modifying MP-II and PLES-I. Ormat has failed to comply with Rule 209-A by failing to apply for and obtain a Rule 209-A ATC permit to construct and operate MP-II and PLES-I under a combined VOC emissions limit of 500 lbs/day, and failing to install BACT and obtain emissions offsets.

On or around February 8, 2010, GBUAPCD issued PTOs Nos. 583-03-09 (MP-II) and 575-03-09 (PLES-I), approving a combined emissions limit for MP-II and PLES-I of 500 lbs/day total VOC emissions from combined point and fugitive isobutene emissions. The combined emissions limit resulted in emissions from the single source of double the 250 lbs/day of VOC emissions.

Ormat failed to obtain a Rule 209-A permit for the combined MP-II and PLES-I source. Under Rule 209-A, Ormat was required to install BACT and obtain emissions offsets for MP-II and PLES-I, but failed to do so. MP-II and PLES-I's combined emissions limit is 500 lbs/day, which is double the Rule 209-A threshold for requiring BACT. This approved emissions limit constitutes the total facility emissions for purposes of applying Rule 209-A. Rule 209-A.C.1 (calculation of emissions). Under GBUAPCD Rule 209-A, a permit for a new or modified source must be denied if it results in an increase in emissions of 250 or more lbs/day of any pollutant or precursor for which there is a NAAQS, including VOCs, unless BACT and emission offsets are required at the source. GBUAPCD Rule 209-A.B.2.a. Under PTOs Nos. 583-03-09 (MP-II) and 575-03-09 (PLES-I).

Ormat failed to obtain a Rule 209-A permit, and therefore failed to implement BACT, failed to obtain emission offsets prior to commencing operations under the combined emissions limit. Thus, Ormat has violated the Clean Air Act and GBUAPCD Rule 209-A by proposing to operate, and operating, MP-II and PLES-I without obtaining a permit under Rule 209-A. Ormat's operations have resulted, and threaten to further result in, a net emissions increase of air contaminants, including VOCs. This violation has been ongoing since approximately February 8, 2010.

14

Mr. Bernardy, Mr. Bronicki, Mrs. Bronicki, Mr. Back
Notice of Intent to File Suit Under the Clean Air Act
May 7, 2014

Finally, before an applicant may obtain an ATC permit for any new or modified stationary source, Rule 209-A requires the applicant to certify that all other stationary sources within the State which are owned or operated by that applicant are in compliance, or on an approved scheduled for compliance, with all applicable emission limitations and standards of the Clean Air Act (42 U.S.C. §§ 7401 et seq.) and all applicable emissions limitations and standards which are part of the SIP approved by the Environmental Protection Agency ("EPA").  Rule 209-A.A.2.  Ormat failed to comply with this requirement for MP-II and PLES-I because, on or around February 8, 2010, when Ormat applied for and obtained permits authorizing the 500 lbs/day emissions limit for MP-II and PLES-I, Ormat's other geothermal plant at the Ormat Complex, MP-I, was also operating with an emissions limit of 500 lbs/day without employing BACT or emissions offsets, in violation of Rule 209-A and the Clean Air Act.  Similarly, Ormat has failed to obtain an ATC permit, and failed to implement BACT and other Rule 209-A requirements, for the Ormat Complex as a whole.  Thus, Ormat has failed to comply with Rule 209-A's threshold requirement that, before an ATC permit can issue, all of its other California facilities must be in compliance with applicable SIP and other Clean Air Act requirements *before* it may obtain any new air permits.  This violation has been ongoing since at least February 8, 2010.

Prior to receiving a PTO and beginning to operate MP-II and PLES-I as a stationary source with an emissions limit of 500 lbs/day of VOCs, Ormat was required to comply with GBUAPCD Rule 209-A and Clean Air Act §173(a), 42 U.S.C. §7503(a), including implementing BACT and emissions offsets at the facility.  Ormat has failed to comply with these requirements since at least February 8, 2010.

To comply with Rule 209-A and the Clean Air Act, Ormat must apply to GBUAPCD for an ATC for MP-II and PLES-I as a single stationary source.  Under Clean Air Act §7411(e), it is unlawful to operate MP-II and PLES-I in violation of these requirements.  Ormat has owned and operated MP-II and PLES-I without complying with Rule 209-A and the Clean Air Act.  Accordingly, Ormat has violated the new source review performance standards established under the Clean Air Act §111(e), 42 U.S.C. §7411(e) and GBUAPCD Rule 209-A.

Noticing Parties intend to sue Ormat for violating the Clean Air Act §111(e), 42 U.S.C. §7411(e) and GBUAPCD Rule 209-A, on each of the following days:  February 8, 2010 through the present, and every day until Ormat comes into compliance with the law.

Each day that Ormat continues to operate MP-II and PLES-I and/or any equipment at MP-II and PLES-I in violation of the Clean Air Act §111(e), 42 U.S.C. §7411(e) and GBUAPCD Rule 209-A, constitutes a separate violation of the Clean Air Act for which Noticing Parties plan to sue Ormat.  Noticing Parties intend to seek injunctive relief from the court to require Ormat to comply with the Clean Air Act provisions being violated and to ask the court to impose civil penalties for each

15

Mr. Bernardy, Mr. Bronicki, Mrs. Bronicki, Mr. Back
Notice of Intent to File Suit Under the Clean Air Act
May 7, 2014

individual violation of the Clean Air Act, up to a maximum of $37,500 per day, per violation.

### D. Ormat Has Violated Clean Air Act §§ 304(a)(1) and (3), 42 USC §§ 7604(a)(1) and (3) and GBUAPCD Rule 209-B by Proposing to Operate, and Operating, the MP-II and PLES-I Facilities Without the Permits Required By Law, Including BACT.

Noticing Parties hereby give notice to Ormat that Noticing Parties intend to sue Ormat under Clean Air Act §304(a)(1) and (3), 42 U.S.C. §7604(a)(1) and (3), Clean Air Act §111(e), 42 U.S.C. §7411(e), and GBUAPCD Rule 209-B for operating, and proposing to operate, a stationary source without complying with the requirements of the Clean Air Act.  See Clean Air Act §173, 42 U.S.C. §7503.

Ormat has failed to comply with Rule 209-B by applying for and obtaining PTOs from the Air District to operate the air pollutant emitting equipment at the MP-II and PLES-I facilities without implementing BACT and emissions offsets, and without obtaining an ATC permit(s) pursuant to Rule 209-A.  Rule 209-B.A.1.  PTOs Nos. 583-03-09 (MP-II) and 575-03-09 (PLES-I), which approved a combined emissions limit for MP-I East and MP-I West of 500 lbs/day total VOC emissions, fail to comply with Rule 209-B because Ormat failed to apply for or obtain an ATC permit pursuant to Rule 209-A, and failing to implement BACT and emissions offsets, *before* it applied for and received a PTO.

Prior to receiving a PTO and beginning to operate the MP-II and PLES-I facilities, Ormat was required to comply with Rule 209-B, and Clean Air Act §173(a).  42 U.S.C. §7503(a).  Because compliance with Rule 209-B is predicated on compliance Rule 209-A, by failing to comply with Rule 209-A, Ormat also failed to comply with Rule 209-B. Ormat has failed to comply with these requirements since at least February 8, 2010.  To comply with Rule 209-B and the Clean Air Act, Ormat must first apply to GBUAPCD for an ATC pursuant to Rule 209-A, and must install BACT, obtain emissions offsets, and any other conditions required by Rule 209-A, before obtaining a PTO to operate MP-II and PLES-I at an emission level that is above the Rule 209-A threshold.  Only after Ormat has obtained a valid Rule 209-A permit for MP-II and PLES-I may it apply for and obtain a PTO pursuant to Rule 209-B.

Under Clean Air Act §7411(e), it is unlawful to operate MP-II and PLES-I in violation of new source review standards. Ormat has operated several pieces of equipment at the MP-II and PLES-I facilities without complying with the Clean Air Act's new source review standards. Accordingly, Ormat has violated the new source review performance standards established under the Clean Air Act §111(e), 42 U.S.C. §7411(e) and GBUAPCD Rule 209-B.

Mr. Bernardy, Mr. Bronicki, Mrs. Bronicki, Mr. Back
Notice of Intent to File Suit Under the Clean Air Act
May 7, 2014

Noticing Parties intend to sue Ormat for violating the Clean Air Act §111(e), 42 U.S.C. §7411(e) and GBUAPCD Rule 209-B, on each of the following days:  February 8, 2010 through the present and every day until Ormat comes into compliance with the law.

Each day that Ormat continues to operate MP-II and PLES-I and/or any MP-II or PLES-I equipment in violation of the Clean Air Act §111(e), 42 U.S.C. §7411(e) and GBUAPCD Rule 209-B, constitutes a separate violation of the Clean Air Act for which Noticing Parties plan to sue Ormat.  Noticing Parties intend to seek injunctive relief from the court to require Ormat to comply with the Clean Air Act provisions being violated and to ask the court to impose civil penalties for each individual violation of the Clean Air Act, up to a maximum of $37,500 per day, per violation.

**E.  Ormat Has Violated Clean Air Act §§ 304(a)(1) and (3), 42 USC §§ 7604(a)(1) and (3) and GBUAPCD Rules 209-A and 209-B By Proposing to Construct and Operate the M-1 Facility in Violation of Rules 209-A and 209-B.**

**1.  Ormat Has Violated Rule 209-A By Proposing to Construct and Operate M-1 Without Requiring BACT and Emissions Offsets During Start-Up Operations.**

Noticing Parties hereby give notice to Ormat that Noticing Parties intend to sue Ormat under Clean Air Act §304(a)(1) and 304(a)(3), 42 U.S.C. §7604(a)(1) and 7604(a)(3), Clean Air Act §111(e), 42 U.S.C. §7411(e), and GBUAPCD Rule 209-A for operating, and proposing to operate, a stationary source without complying with the requirements of the Clean Air Act.  See Clean Air Act §173, 42 U.S.C. §7503.

Ormat has failed to comply with Rule 209-A by proposing to construct and operate the M-1 replacement plant simultaneously with the MP-I plant for up to two years, without obtaining a Rule 209-A permit and without installing BACT or obtaining emissions offsets at either facility.  MP-I's existing VOC emission limit is 500 lbs/day. M-I's projected VOC emission limit is 205 lbs/day.  During the two-year start-up period, MP-I and M-1 will have a total, combined VOC emission limit of 705 lbs/day.  This is more than double the Rule 209-A emission threshold of 250 lbs/day, triggering the need to obtain a Rule 209-A permit, including BACT and emissions offsets.  MP-I and M-1 will operate as a single stationary source within the meaning of Rule 209-A for up to two years once M-1 is online.  By proposing to construct and operate the M-1 facility without complying with Rule 209-A during the two-year start-up period, Ormat has violated, and continues to violate, GBUAPCD Rule 209-A and Clean Air Act §173(a), 42 U.S.C. §7503(a).  Ormat has failed to comply with these requirements since at least July 1, 2011.

Mr. Bernardy, Mr. Bronicki, Mrs. Bronicki, Mr. Back
Notice of Intent to File Suit Under the Clean Air Act
May 7, 2014

To comply with Rule 209-A and the Clean Air Act, Ormat must apply to GBUAPCD for a Rule 209-A ATC permit, including BACT and emission offsets.  Under Clean Air Act §7411(e), it is unlawful to operate M-1 in violation of SIP requirements.  Ormat has proposed to construct and operate M-1 without complying with Rule 209-A and the Clean Air Act.  Accordingly, Ormat has violated the new source review performance standards established under the Clean Air Act §111(e), 42 U.S.C. §7411(e) and GBUAPCD Rule 209-A.

Noticing Parties intend to sue Ormat for violating the Clean Air Act §111(e), 42 U.S.C. §7411(e) and GBUAPCD Rule 209-A, on each of the following days:  July 1, 2011 through the present and each day until Ormat complies with the law.

Each day that Ormat proposed to operate or operates M-1 equipment in violation of the Clean Air Act §111(e), 42 U.S.C. §7411(e) and GBUAPCD Rule 209-A, constitutes a separate violation of the Clean Air Act for which Noticing Parties plan to sue Ormat.  Noticing Parties intend to seek injunctive relief from the court to require Ormat to comply with the Clean Air Act provisions being violated and to ask the court to impose civil penalties for each individual violation of the Clean Air Act, up to a maximum of $37,500 per day, per violation.

## 2.  Ormat Has Violated Rule 209-B By Proposing to Construct and Operate M-1 for a Longer Start-Up Period Than Permitted By Law.

Noticing Parties hereby give notice to Ormat that Noticing Parties intend to sue Ormat under Clean Air Act §304(a)(1) and (3), 42 U.S.C. §7604(a)(1) and (3), Clean Air Act §111(e), 42 U.S.C. §7411(e), and GBUAPCD Rule 209-B for operating and proposing to operate, a stationary source without complying with the New Source Review requirements of the Clean Air Act.  See Clean Air Act §173, 42 U.S.C. §7503.

Ormat has failed to comply with Rule 209-B by applying for and obtaining permits from the Air District and the County to construct and operate the M-1 replacement plant with a start-up period of more than 90 days.  As approved, the M-1 plant will allow a startup period of two (2) years, which is 730 days.  Under Rule 209-B, Ormat was prohibited from applying for and obtaining an ATC and PTO for the M-1 facility that authorized more than 90 days of overlapping start-up operations.  Thus, by proposing to obtain permits to construct and operate the M-1 facility with a 2-year start-up period, Ormat has violated, and continues to violate, GBUAPCD Rule 209-B and Clean Air Act §173(a), 42 U.S.C. §7503(a).  Ormat has failed to comply with these requirements since at least July 1, 2011.

To comply with Rule 209-B and the Clean Air Act, Ormat must apply to GBUAPCD for an ATC and PTO for M-1 which limits M-1's start-up period to no more than 90 days.  The M-1 permits previously applied for and obtained by Ormat failed to comply Rule 209-B because they authorize a longer start-up period than is allowed

Mr. Bernardy, Mr. Bronicki, Mrs. Bronicki, Mr. Back
Notice of Intent to File Suit Under the Clean Air Act
May 7, 2014

under Rule 209-B.A.3, by at least 640 days.  Under Clean Air Act §7411(e), it is unlawful to obtain permits to construct and operate M-1 in violation of Rule 209-B. Accordingly, Ormat has violated Rule 209-B, an emission standard or limitation within the meaning of the Clean Air Act.  Additionally, Ormat proposes to construct and operate the M-1 plant  without complying with the New Source Review standards contained in the Clean Air Act §173, 42 U.S.C. §7503 and GBUAPCD Rule 209-B.

Noticing Parties intend to sue Ormat for violating the Clean Air Act §111(e), 42 U.S.C. §7411(e) and GBUAPCD Rule 209-B, on each of the following days: July 1, 2011 through the present and each day until the violations are remedied.

Each day since Ormat proposed to construct the M-1 facility with a 2-year start-up period constitutes a separate violation of the Clean Air Act §111(e), 42 U.S.C. §7411(e) and GBUAPCD Rule 209-B.  Noticing Parties intend to seek injunctive relief from the court to require Ormat to comply with the Clean Air Act provisions being violated and to ask the court to impose civil penalties for each individual violation of the Clean Air Act, up to a maximum of $37,500 per day, per violation.

### F. Ormat Has Violated Clean Air Act §§ 304(a)(1) and 304(a)(3), 42 USC §§ 7604(a)(1) and 7604(a)(3) and GBUAPCD Rule 209-A by Proposing to Operate, and Operating, the Ormat Complex Without the Permits Required by Law, Including BACT.

Noticing Parties hereby give notice to Ormat that Noticing Parties intend to sue Ormat under Clean Air Act §304(a)(1) and 304(a)(3), 42 U.S.C. §7604(a)(1) and 7604(a)(3), Clean Air Act §111(e), 42 U.S.C. §7411(e), and GBUAPCD Rule 209-A for operating, and proposing to operate, a stationary source without complying with the requirements of the Clean Air Act.  See Clean Air Act §173, 42 U.S.C. §7503.

The Ormat Complex facilities are owned and operated as a single stationary source within the meaning of Rule 209-A and the federal Clean Air Act, and Ormat must comply with the requirements of the Act prior to operating and/or modifying the Complex.  Ormat has failed to apply for or obtain an ATC permit pursuant to Rule 209-A, and has failed to install BACT or obtain emissions offsets for the Ormat Complex, in violation of Rule 209-A.

Ormat owns and operates the three existing facilities – MP-I, MP-II, and PLES-I – as a single source.  The operation of the equipment at each of the individual geothermal plants is dependent upon and affects the processes of the other facilities' equipment. Additionally, the operation of all three facilities relies on the same raw geothermal material extracted from, and injected into, the same underlying resource.  In particular, MP-I, MP-II, and PLES-I rely on the same production wells and same common raw material, namely the underlying geothermal resource.  The three Ormat facilities also share a single control room and other shared equipment, have connected pipelines,

Mr. Bernardy, Mr. Bronicki, Mrs. Bronicki, Mr. Back
Notice of Intent to File Suit Under the Clean Air Act
May 7, 2014

have the same contract limitations on collective power production between the plants, have a single reclamation plan, and are operated by a the same company, Ormat.  The three facilities also fall under the same industrial grouping – SIC Code 4911 (Electric Services), and NAICS Code 221119 (Other Electric Power Generation).  These factors make the three Ormat facilities a single stationary source for purposes of the Clean Air Act and compliance with Rule 209-A.  Ormat has violated the Act and GBUAPCD Rule 209-A by operating the Ormat Complex without obtaining permits for this single stationary source in compliance with Rule 209-A.  This violation has been ongoing since approximately January 1, 1989.

Under GBUAPCD Rule 209-A, a permit for a new or modified source must be denied if it results in an increase in emissions of, inter alia, VOCs of 250 or more lbs/day unless BACT and emissions offsets are employed at the source.  GBUAPCD Rule 209-A.B.2.a.

The Ormat Complex is a new and/or modified source with fugitive emissions of VOCs totaling over 250 lbs/day.  The existing MP-I facility emits VOCs at a rate of approximately 500 lbs/day.  MP-II and PLES-I have a combined VOC emissions limit of 500 lbs/day from point and fugitive isobutene emissions.  Once operational, the M-I plant will emit an additional 205 lbs/day of VOCs in the form of fugitive n-pentane emissions for a start-up period of at least 2 years. Thus, during each day of existing operations, the Ormat Complex has permitted emissions of 1,000 lbs/day of VOC emissions, and will generate up to 1,205 lbs/day of VOC emissions during the M-1 start-up period.  The Ormat Complex emissions vastly exceed Rule 209-A's emissions threshold of 250 lbs/day.

Ormat has applied for and obtained PTOs for the individual facilities in the Ormat Complex – MP-I, MP-II, and PLES-I – but has failed to apply for or obtain an ATC or other single stationary source permit for the Ormat Complex  as a whole.  Ormat has failed obtain a Rule 209-A permit for the single source of the Ormat Complex, which is composed of three faciltiies (MP-I, MP-II, and PLES-I), and therefore has failed to install BACT and has failed to obtain emissions offsets for the Ormat Complex.  Ormat has continuously operated the Ormat Complex without using BACT, and without emission offsets, since approximately January 1, 1989.  Ormat's operations have resulted, and threaten to further result, in a net emission increase of air contaminants, including VOCs, above levels allows by the Act.  These violations have been ongoing since approximately January 1, 1989.

Prior to receiving a PTO and beginning to operate the Ormat Complex, Ormat was required to obtain an ATC in compliance with GBUAPCD Rule 209-A and Clean Air Act §173(a), 42 U.S.C. §7503(a).  Ormat has failed to comply with these requirements since at least January 1, 1989.

Mr. Bernardy, Mr. Bronicki, Mrs. Bronicki, Mr. Back
Notice of Intent to File Suit Under the Clean Air Act
May 7, 2014

To comply with Rule 209-A and the Clean Air Act, Ormat must apply to GBUAPCD for a new ATC for the Ormat Complex as a single stationary source.  The ATCs previously obtained and utilized by the Ormat Complex were for individual facilities in a single stationary source, and failed to implement BACT and emissions offsets for the entire Ormat Complex, as required by the Clean Air Act and Rule 209-A.

Under Clean Air Act §7411(e), it is unlawful to operate the Ormat Complex in violation of the new source review standards. Ormat has operated several pieces of equipment at the Complex without complying with the Clean Air Act's new source review standards. Accordingly, Ormat has violated the new source review performance standards established under the Clean Air Act §111(e), 42 U.S.C. §7411(e) and GBUAPCD Rule 209-A. Additionally, Ormat proposes to construct the M-1 facility without complying with Rule 209-A, despite the fact that M-1 would constitute another facility in the single source of the Ormat Complex.

Noticing Parties intend to sue Ormat for violating the Clean Air Act §111(e), 42 U.S.C. §7411(e) and GBUAPCD Rule 209-A, on each of the following days:  January 1, 1989 through the present and every day until the violations are remedied.

Each day that Ormat continues to operate the Ormat Complex and/or any equipment at the Ormat Complex in violation of the Clean Air Act §111(e), 42 U.S.C. §7411(e) and GBUAPCD Rule 209-A, constitutes a separate violation of the Clean Air Act for which Noticing Parties plan to sue Ormat.  Noticing Parties intend to seek injunctive relief from the court to require Ormat to comply with the Clean Air Act provisions being violated and to ask the court to impose civil penalties for each individual violation of the Clean Air Act, up to a maximum of $37,500 per day, per violation.

## IV. **Identities of Violators.**

The persons who in the course of doing business have committed the violations of the Clean Air Act alleged herein are the employees, officers, directors, and agents of Mammoth Pacific Limited Partnership ("MPLP"), an owner and operator of the Ormat Complex geothermal facilities, including but not limited to Mr. John Bernardy, Plant Manager; Ormat Nevada, Inc., an owner and operator of the Ormat Complex geothermal facilities, the parent company of MPLP and a wholly owned subsidiary of Ormat Technologies, Inc., including but not limited to Mrs. Yehudit Bronicki, President of Ormat Nevada; and Ormat Technologies, Inc., an owner and operator of the Ormat Complex geothermal facilities and the parent company of Ormat Nevada, including but not limited to Mr. Yoram Bronicki, President / Director / Chief Operating Officer, Mrs. Yehudit Bronicki, Director / Chief Executive Officer, and Mr. Gillon Back, Chairman of the Board of Directors.  Noticing Parties are informed and believe that, in August 2010, Ormat Technologies became the 100% owner of MPLP through acquisition, making it the sole owner of the Ormat companies noticed herein.

Mr. Bernardy, Mr. Bronicki, Mrs. Bronicki, Mr. Back
Notice of Intent to File Suit Under the Clean Air Act
May 7, 2014

The Ormat defendants have been sent a copy of this Notice through registered mail, return receipt requested to their agents for service of process, presidents, chairmen of the board, and CEOs and, to the addresses and persons listed on the attached service list.

## V.  Location of Violations.

The location of the violations of the Clean Air Act are approximately as follows: MP–I is located approximately 1,200 feet northeast of the intersection of U.S. Highway 395 and California State Route 203 on 90 acres of private (fee) land in Mammoth Lakes, California 93546.  MP–II is also located on Ormat's private lands, just 1,200 feet east–northeast of the MP–I power plant and adjacent to it, at Latitude/Longitude: 37.646265° / -118.909091°.  PLES-I is located on adjacent public lands at Hwy 395 and State Rte 203, east of the town of Mammoth Lakes, at Latitude/Longitude: 37.645609° / -118.909428°.

## VI. Persons Receiving Notice of the Violations.

With this letter, the Noticing Parties give notice of Ormat's Clean Air Act violations to the persons and entities listed at the top of this Notice, and on the attached service list.  Noticing Parties put Ormat on notice that they are the persons responsible for the violations described above.  If additional persons are subsequently identified as also being responsible for the violations set forth above, Noticing Parties put Ormat on notice that they intend to include those persons in this action.

## VII.   Identity of Noticing Parties.

The entities and individuals giving this notice are:

- Global Community Monitor, P.O. Box 1784, El Cerrito, CA 94530, Denny Larson, Executive Director; and

- Russell Covington, P.O. Box 203, Bishop CA 93515; and

- Randal Sipes, Jr., 77 Virginia Street, Rovanna Ca, 93514; and

- Laborers International Union of North America, Local Union 783, 104 West Benedict St., San Bernardino, CA. 92408, Richard Sierra, Business Manager.

Mr. Bernardy, Mr. Bronicki, Mrs. Bronicki, Mr. Back
Notice of Intent to File Suit Under the Clean Air Act
May 7, 2014

VIII.   **Legal Counsel for Noticing Party.**

Legal counsel representing the Noticing Parties in this matter is as follows:

Richard T. Drury
Christina M. Caro
Lozeau | Drury LLP
410 12th Street, Suite 250
Oakland, CA 94607
P: 510.836.4200
F: 510.836.4205
www.lozeaudrury.com
richard@lozeaudrury.com
christina@lozeaudrury.com

IX. **Potential Resolution of Issues During the Sixty Day Period.**

During the sixty (60) day notice period, the Noticing Parties are willing to discuss effective remedies for the violations of the Act at issue in this notice. If you wish to pursue such discussions in the absence of litigation, we suggest that you initiate them within the next 10 days with the legal counsel identified in Section F, or with the persons identified as the Noticing Parties in Section E, so that the discussions may be completed before the end of the sixty (60) day notice period. We do not intend to delay the filing of a complaint in federal court if the discussions fail to resolve these matters within the sixty (60) day notice period, and we intend to seek all appropriate relief, including injunctive relief, penalties, and all costs of litigation, including, but not limited to, attorney's fees, expert witness fees and other costs.

We believe this notice provides information sufficient for you to determine the violations of the federal Clean Air Act at issue. If, however, you have any questions, please also feel free to contact us for clarification.

Sincerely,

Richard T. Drury
Christina M. Caro
Lozeau | Drury LLP
Attorneys for Noticing Parties

23

Mr. Bernardy, Mr. Bronicki, Mrs. Bronicki, Mr. Back
Notice of Intent to File Suit Under the Clean Air Act
May 7, 2014

## <u>SERVICE LIST</u>

 (By Certified Mail, return Receipt Requested)

Ms. Gina McCarthy, Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, NW
Washington, D.C. 20460

Mr. Jared Blumenfeld, Regional
Administrator
U.S. Environmental Protection Agency
Region 9
75 Hawthome Street
San Francisco, CA 94105

Ms. Mary D. Nichols, Chair of the Board
California Air Resources Board
1001 "I" Street
P.O. Box 2815
Sacramento, CA 95812

Mr. Richard Corey, Executive Officer
California Air Resources Board
1001 "I" Street
P.O. Box 2815
Sacramento, CA 95812

Governor Edmund G. Brown Jr.
c/o Office of the Governor
State of California
State Capitol, Suite 1173
Sacramento, CA 95814

Mr. Eric Holder
United States Attorney General
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Mr. Bernardy, Mr. Bronicki, Mrs. Bronicki, Mr. Back
Notice of Intent to File Suit Under the Clean Air Act
May 7, 2014



Ms. Kamala D. Harris
Attorney General of the State of California
Office of the Attorney General
1300 "I" Street
Sacramento, CA 95814