1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   GLOBAL COMMUNITY MONITOR, a              No.  2:14-cv-01612-MCE-KJN
     California nonprofit corporation;
12   LABORERS' INTERNATIONAL UNION
     OF NORTH AMERICA LOCAL UNION
13   NO. 783, an organized labor union;
     RANDAL SIPES, JR., an individual;
14   RUSSEL COVINGTON, an individual,

15              Plaintiffs,                    **MEMORANDUM AND ORDER**

16        v.

17   MAMMOTH PACIFIC, L.P., a California
     Limited Partnership; ORMAT NEVADA,
18   INC., a Delaware Corporation; ORMAT
     TECHNOLOGIES, INC., a Delaware
19   Corporation; and DOES I-X, inclusive,

20              Defendants.

21

22        Plaintiffs Global Community Monitor, Laborers' International Union of North

23   America Local Union No. 783, Randal Sipes, Jr., and Russel Covington (collectively,

24   "Plaintiffs") filed a citizen suit pursuant to section 304(a) of the federal Clean Air Act,

25   42 U.S.C. § 7604, which allows any person to bring a lawsuit in federal court against any

26   person who violates an "emission standard or limitation."[1]

        _____

        [1] The term "emission standard or limitation" includes "a schedule or timetable of compliance,
     emission limitation, standard of performance or emission standard" and "any other standard, limitation, or
     schedule established . . . under any applicable State implementation plan approved by the Administrator,

1    Presently before the Court are two motions:  (1) Defendants' Motion to Dismiss for

2    Failure to Join Necessary and Indispensable Parties under Federal Rules of Civil

3    Procedure ("FRCP") 12(b)(7) and 19; and (2) Defendants' Motion to Dismiss for Lack of

4    Subject Matter Jurisdiction and Failure to State a Claim for Which Relief Can be Granted

5    under FRCP 12(b)(1) and 12(b)(6).  For the reasons stated below, Defendant's first

6    Motion (ECF No. 14) is DENIED and Defendant's second Motion (ECF No. 17) is

7    GRANTED in part and DENIED in part.[2]

8

9                                **BACKGROUND**

10

11    Plaintiffs' Complaint asserts eight causes of action against Defendants Mammoth

12   Pacific, L.P., Ormat Technologies, Inc., and Ormat Nevada, Inc. (collectively

13   "Defendants"), the owners and operators of several geothermal plants located in the

14   Great Basin Valleys Air Basin.  Three of the plants—(1) Mammoth Pacific I (MP-I), which

15   is made up of MP-I East and MP-I West; (2) Mammoth Pacific II (MP-II); and (3) Pacific

16   Lighting Energy Systems Unit I (PLES-I)—are operational.  Another plant, M-1, is a

17   proposed replacement plant for MP-I that has thus far only received local land use

18   permits.

19    At the plants, Defendants use hot geothermal water pumped from deep

20   underground to heat volatile organic compounds ("VOC"), which in turn spin turbines to

21   generate electricity.  The facilities emit VOCs (in the form of fugitive emissions of either

22   n-pentane or isobutene) through valves, flanges, seals, or other unsealed joints in facility

23   equipment.  VOCs combine with nitrogen oxides to form ozone in the atmosphere.

24   Ozone is a criteria air pollutant regulated by the Clean Air Act, and thus VOCs are

25   _____

26   any permit term or condition, and any requirement to obtain a permit as a condition of operations."
42 U.S.C. § 7604(f).

27          [2] Because oral argument would not have been of material assistance, the Court ordered this
matter submitted on the briefing.  E.D. Cal. L. R. 230(g).

28

1   regulated as ozone precursors.  According to the United States Environmental

2   Protection Agency ("EPA"), breathing ground-level ozone can result in a number of

3   negative health effects, including induction of respiratory symptoms, decrements in lung

4   function, and inflammation of airways.  Plaintiffs are individuals and organizations with

5   members who live, work, and recreate in direct vicinity of the plants.

6        The Great Basin Unified Air Pollution Control District (the "Air District") is the state

7   agency charged with developing air regulations for Mono, Inyo and Alpine Counties.

8   The Air District has established rules and regulations to reduce the emission of ozone-

9   forming pollutants.   On August 20, 1979, the Air District promulgated Rules 209-A and

10  209-B.  Rule 209-A prohibits the Air District from issuing an authority to construct ("ATC")

11  permit for any new stationary source or modification[3]  to a stationary source that emits

12  250 pounds per day or more of VOCs unless the facility obtains emissions offsets and

13  installs the best available control technology ("BACT").  Emissions offsets are reductions

14  from other facilities equal to the amount of increased emissions and BACT is advanced

15  pollution control technology that dramatically reduces pollution.  Rule 209-B prohibits the

16  Air District from issuing a permit to operate ("PTO") for any new or modified stationary

17  source to which Rule 209-A applies unless the owner or operator of the source has

18  obtained an ATC permit granted pursuant to Rule 209-A.  In combination, these rules

19  ensure that all required emissions offsets will be implemented at start-up and maintained

20  throughout the source's operational life.   Rules 209-A and 209-B were approved by the

21  EPA as part of California's State Implementation Plan ("SIP") on June 18, 1982, making

22  the regulations fully-enforceable federal law.  See Safe Air for Everyone v. U.S. EPA,

23  488 F.3d 1088, 1096-97 (9th Cir. 2007).

24       Plaintiff's Complaint alleges that Defendants violated both Rule 209-A and 209-B.

25  With respect to the existing plants, Plaintiffs allege that while originally separately

26  permitted as four plants in the late 1980s, in 2010 Defendants applied for and obtained

27       [3] Modification is defined as "any physical change in, change in method of operation of, or addition
28  to an existing stationary source, except that routine maintenance or repair shall not be considered to be a
    physical change."  Rule 209-A(F)(2).

1   PTOs from the Air District that authorize combined emissions limits for MP-I East and

2   MP-I West as a single source and for MP-II and PLES-I as a single source.  Each single

3   source was permitted to emit up to 500 pounds per day of fugitive VOC emissions—

4   double the limit under Rule 209-A—without receiving ATC permits that required installing

5   BACT and obtaining emissions offsets.  Additionally, Plaintiff alleges that in 2013, the Air

6   District issued ATC permits for a modification of MP-I without requiring Defendants to

7   install BACT or obtain emissions offsets.

8        Plaintiff's Complaint also alleges that Defendants have operated the three existing

9   geothermal plants for over twenty years as a single stationary source without applying

10  for the permits required by Rules 209-A and 209-B.[4]  Plaintiffs contend that the complex

11  should be viewed as a single stationary source because the plants are owned and

12  operated by the same company, located on adjacent lands, and share a single

13  geothermal wellfield, a common control room, common pipes that carry geothermal liquid

14  to and from wellfield and other common facilities.

15       Plaintiffs request that the Court issue a preliminary and permanent injunction

16  requiring Defendants to cease and desist from any operation of the existing plants until

17  Defendants install BACT and obtain emissions offsets.

18       While Plaintiffs originally challenged the proposed M-1 facility's permitting and

19  sought an injunction to halt construction, they now concede that the Court does not have

20  jurisdiction to consider these claims since the Air District has yet to issue permits to

21  Defendants for this plant.  ECF No. 21 at 8.  Accordingly, Plaintiffs' sixth and seventh

22  causes of action, which pertain to the M-1 facility, are DISMISSED.  Additionally,

23  because of this concession, on the second Motion to Dismiss, the Court will consider

24  only Defendants' remaining argument that Plaintiffs failed to state a claim under which

25  _____
        [4] Rule 209-A defines "Stationary Source" as

26              any aggregation of air-contaminant emitting equipment which includes
            any structure, building, facility, equipment, installation or operation (or
27          aggregation thereof) which is located on one or more bordering properties
            within the District and which is owned, operated, or under shared
28          entitlement use by the same person.

1  relief can be granted in their first, second, third, fourth, fifth and eighth causes of action

2  and thus the case should be dismissed under FRCP 12(b)(6).

3

4                                    **STANDARD**

5

6          On a motion to dismiss for failure to state a claim under FRCP 12(b)(6), all

7  allegations of material fact must be accepted as true and construed in the light most

8  favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38

9  (9th Cir. 1996).  FRCP 8(a)(2) "requires only 'a short and plain statement of the claim

10  showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of

11  what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly,

12  550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  A

13  complaint attacked by a FRCP 12(b)(6) motion to dismiss does not require detailed

14  factual allegations.  However, "a plaintiff's obligation to provide the grounds of his

15  entitlement to relief requires more than labels and conclusions, and a formulaic recitation

16  of the elements of a cause of action will not do."  Id. (internal citations and quotations

17  omitted).  A court is not required to accept as true a "legal conclusion couched as a

18  factual allegation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550

19  U.S. at 555).  "Factual allegations must be enough to raise a right to relief above the

20  speculative level."  Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R.

21  Miller, Federal Practice and Procedure, § 1216 (3d ed. 2004) (stating that the pleading

22  must contain something more than "a statement of facts that merely creates a suspicion

23  [of] a legally cognizable right of action")).

24          Furthermore, FRCP "8(a)(2) . . . requires a showing, rather than a blanket

25  assertion, of entitlement to relief."  Twombly, 550 U.S. at 555 n.3 (internal citations and

26  quotations omitted).  Thus, "[w]ithout some factual allegation in the complaint, it is hard

27  to see how a claimant could satisfy the requirements of providing not only 'fair notice' of

28  the nature of the claim, but also 'grounds' on which the claim rests."  Id. (citing Wright &

1  Miller, supra, at 94, 95).  A pleading must contain "only enough facts to state a claim to

2  relief that is plausible on its face."  Id. at 570.  If the plaintiffs "have not nudged their

3  claims across the line from conceivable to plausible, their complaint must be dismissed."

4  Id.  However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge

5  that actual proof of those facts is improbable, and 'that a recovery is very remote and

6  unlikely.'"  Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

7          A court granting a motion to dismiss a complaint must then decide whether to

8  grant leave to amend.  Leave to amend should be "freely given" where there is no

9  "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice

10  to the opposing party by virtue of allowance of the amendment, [or] futility of the

11  amendment . . . ."  Foman v. Davis, 371 U.S. 178, 182 (1962); see Eminence Capital,

12  LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as

13  those to be considered when deciding whether to grant leave to amend).  Not all of these

14  factors merit equal weight.  Rather, "the consideration of prejudice to the opposing party

15  . . . carries the greatest weight."  Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d

16  183, 185 (9th Cir. 1987)).  Dismissal without leave to amend is proper only if it is clear

17  that "the complaint could not be saved by any amendment."  Intri-Plex Techs. v. Crest

18  Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d

19  1006, 1013 (9th Cir. 2005)); "Leave need not be granted where the amendment of the

20  complaint . . . constitutes an exercise in futility."  Ascon Props., Inc. v. Mobil Oil Co., 866

21  F.2d 1149, 1160 (9th Cir. 1989).

22

23                                    **ANALYSIS**

24

25          In their 12(b)(6) Motion, Defendants argue that Plaintiffs' complaint fails to state a

26  claim for which relief can be granted for five reasons:  (1) the Clean Air Act's new source

27  performance standards do not apply to Defendants' facilities, so Plaintiffs' claims under

28  Clean Air Act  section 111(e) fail as a matter of law; (2) Defendants' facilities are not

                                          6

1  located in a federal ozone nonattainment area, and thus Plaintiffs' claims under Clean

2  Air Act section 173(a) fail as a matter of law;[5] (3) Rule 209 does not apply to Defendants

3  as the only emissions from Defendants' facilities are fugitive, and Rule 209 does not

4  explicitly include fugitive emissions; (4) Plaintiffs have failed to allege facts showing a

5  violation of Rules 209-A or 209-B; and (5) Plaintiffs may not collaterally attack

6  Defendants' existing permits via a citizen suit.

7       Before reaching the merits of Defendants' 12(b)(6) Motion, the Court must first

8  determine whether it has jurisdiction to hear this case.

9  ### A.  Necessary and Indispensable Parties

10       Defendants argue that the Court lacks jurisdiction because the Air District and the

11  EPA are necessary and indispensable parties to this case.  The Clean Air Act creates an

12  "unusual, bifurcated jurisdictional scheme" that divides jurisdiction between the federal

13  district and circuit courts.  Sierra Club v. Thomas, 828 F.2d 783, 794 (D.C. Cir. 1987).

14  Pursuant to the Clean Air Act's judicial review provision, "[a] petition for review of the

15  [EPA] Administrator's action in approving or promulgating any [state] implementation

16  plan . . . or any other final action of the Administrator under this chapter . . . may be filed

17  only in the United States Court of Appeals for the appropriate circuit."  42 U.S.C.

18  § 7607(b)(1) (emphasis added).  Certainly, the Air District may be joined without

19  depriving the Court of jurisdiction.  But if the Court determines that the EPA is a

20  necessary and indispensable party because Plaintiffs are asking the Court to review a

21  final action by the EPA, only the Ninth Circuit Court of Appeals would have jurisdiction

22  over this case, and this Court would have to dismiss it.

23  ///

24

25       [5] The Court does not address these first two arguments, as Plaintiffs have essentially conceded—despite language in the Complaint to the contrary—that their arguments are based on Rule 209 and not sections 111(e) and 173(a) of the Clean Air Act.  See Pls.' Opp., ECF No. 21, at 14 ("The instant case does not seek to enforce nationwide 'standards of performance' . . . the action seeks to enforce Rule 209.").  Any allegations as to violations of sections 111(e) and 173(a) in the Complaint are therefore STRICKEN.  See Compl. at ¶¶ 120, 104, 119, 127, 134.  Despite these concessions, the Court must still consider whether Defendants have violated Rule 209, a full-enforceable federal law independent of sections 111(e) and 173(a).

1   Under FRCP 19, the Court must make three successive inquiries to determine if a

2   party is necessary and indispensable.  First, the Court "must determine whether a

3   nonparty should be joined under Rule 19(a)," in other words, whether the absent party is

4   "necessary."  E.E.O.C. v. Peabody W. Coal Co., 400 F.3d 774, 779 (9th Cir. 2005).  If

5   the Court determines that an absent party is a "necessary party" under FRCP 19(a), "the

6   second stage is for the court to determine whether it is feasible to order that the

7   absentee be joined."  Id.  "Finally, if joinder is not feasible, the court must determine at

8   the third stage whether the case can proceed without the absentee, or whether the

9   absentee is an 'indispensable party' such that the action must be dismissed."  Id.  A

10  person is considered an "indispensable party" when "he cannot be made a party and,

11  upon consideration of the [FRCP 19(b)] factors . . . , it is determined that in his absence

12  it would be preferable to dismiss the action, rather than to retain it."  Id. at 780.  The

13  inquiry under FRCP 19 is "a practical one and fact specific . . . and is designed to avoid

14  the harsh results of rigid application."  Makah Indian Tribe v. Verity, 920 F.3d 555, 558

15  (1990) (citations omitted).  The moving party, here Defendants, has the burden of

16  persuasion in arguing for dismissal.  Id.

17  "There is no precise formula for determining whether a particular non-party is

18  necessary to an action."  Confederated Tribes of Chehalis Indian Reservation v. Lujan,

19  928 F.2d 1496, 1498 (9th Cir. 1991) (internal citations and quotations omitted).  "The

20  determination is heavily influenced by the facts and circumstances of each case."  Id.  In

21  conducting this analysis, the Court must examine whether it "can award complete relief

22  to the parties present without joining the non-party" or, alternatively, "whether the non-

23  party has a 'legally protected interest' in [the] action that would be 'impaired or impeded'

24  by adjudicating the case without it."  Paiute-Shoshone Indians of the Bishop Cmty. of the

25  Bishop Colony, Cal. v. City of Los Angeles, 637 F.3d 993, 997 (9th Cir. 2011) (internal

26  citations omitted).  If the Court answers either of these questions in the affirmative, the

27  absent party is a "required party" under Rule 19(a).  Id.

28  ///

1    The "complete relief" factor considers whether the existing parties can obtain

2    "consummate rather than partial or hollow relief" and whether there is a real possibility of

3    "multiple lawsuits on the same cause of action." Northrop Corp. v. McDonnel Douglas

4    Corp., 705 F.2d 1030, 1043 (9th Cir. 1983).  According to Plaintiffs, "[c]omplete relief in

5    this matter would be an order from the Court requiring Defendants to cease and desist

6    from . . . operation of its geothermal facilities until they comply with Rule 209-A and 209-

7    B and an order requiring defendants to install BACT and obtain offset emissions for

8    those facilities in accordance with Rule 209-A and 209-B."  Pls.' Opp., ECF No. 22, at 8.

9    It is undisputed that the Court has the authority to enforce Rule 209-A and Rule

10   209-B in this citizen suit.  "Approved SIPs may be enforced 'by either the State, the EPA,

11   or via citizen suits.'"  Cal. Dump Truck Owners Ass'n v. Nichols, No. 13-15175, 2015 WL

12   1883368, at *1 (9th Cir. Apr. 27, 2015) (citing Bayview Hunters Point Cmty. Advocates v.

13   Metro. Transp. Comm'n, 366 F.3d 692, 695 (9th Cir. 2004)).  When a citizen suit is

14   brought to compel enforcement, the Court "has the authority and indeed the

15   responsibility to enforce the provisions of [a] SIP."  Citizens for a Better Env't v.

16   Deukmejian, 731 F. Supp. 1448, 1454 (N.D. Cal. 1990) (quoting NRDC v. New York,

17   668 F. Supp. 848, 854 (1987)); see also 42 U.S.C. § 7604(a) ("The district courts shall

18   have jurisdiction, without regard to the amount in controversy or the citizenship of the

19   parties, to enforce such an emission standard or limitation, or such an order, or to order

20   the Administrator to perform such act or duty, as the case may be.").  Thus, the issue

21   before the Court is whether enforcement of Rule 209—Plaintiffs' requested relief—

22   requires the joinder of the Air District and the EPA.

23   Defendants argue that enforcement would require ordering the Air District to issue

24   new permits, relief the Court cannot provide without the Air District's joinder.  Defendants

25   further argue that Plaintiffs' interpretation of the Rules 209-A and 209-B is incorrect and

26   that "in order to grant Plaintiffs' requested relief, the Court must order the [Air District] to

27   interpret and apply Rule 209 in a manner completely at odds with both the plain

28   language of the Rule and the District's method of administering it."  Defs.' Reply, ECF

9

1    No. 25, at 5.  Additionally, since EPA previously adopted Rule 209 as part of the SIP,

2    and only the EPA can make changes to the SIP, Defendants argue that complete relief

3    would also require joinder of the EPA.  See Safe Air for Everyone, 488 F.3d at 1097.

4              Further complicating the issue is the fact that Plaintiffs later state, in passing, that

5    they seek "relief that would oblige Defendants to apply for and obtain permits that

6    comply with Rule 209-A and 209-B."  Pls.' Opp'n., ECF No. 22, at 10.  While the Court

7    would have the authority to order Defendants to apply for permits, it does not have the

8    authority to order Defendants to obtain permits.  Only the Air District can issue permits to

9    Defendants, and the Air District is not currently a party to this case.  However, the Court

10   does not need to definitively decide at this point in the litigation whether enforcement of

11   Rule 209 requires Defendants to obtain new permits that contain BACT and emission

12   offset requirements, or if the Court can simply order Defendants to install BACT and

13   acquire emissions offsets.  Even if Defendants were required to obtain new permits from

14   the Air District—and are therefore forced to cease operations until the Air District

15   completes a review of the permit applications—Plaintiffs would have the relief that they

16   seek:  fewer VOC emissions in the Great Basin Valleys Air Basin.  See Ass'n to Protect

17   Hammersley, Eld, & Totten Inlets v. Taylor Res., Inc., 299 F.3d 1007, 1014-15 (9th Cir.

18   2002) (finding complete relief could be achieved without the state agency because

19   plaintiff would find complete relief regardless of whether defendant was able to acquire a

20   permit).  Thus, the prospective benefit does not depend "on independent decisions of

21   government entities not a party to the pending lawsuit."  California Dump Truck Owners

22   Association v. Nichols, 924 F. Supp. 2d 1126, 1147 (E.D. Cal. 2012) (quoting

23   San Joaquin River Group Auth. v. Nat'l Marine Fisheries, 819 F. Supp. 2d 1077, 1097

24   (E.D. Cal. 2011)), aff'd, No. 13-15175, 2015 WL 1883368 (9th Cir. Apr. 27, 2015).  As

25   discussed more fully below, modification of Rule 209 (and thus the SIP) is not a

26   conceivable outcome of this case.  Therefore, complete relief does not require joinder of

27   the EPA.

28   ///

1    Alternatively, in determining whether an absentee is a "necessary" party under

2  FRCP 19, the Court may consider "whether the non-party has a 'legally protected

3  interest' in [the] action that would be 'impaired or impeded' by adjudicating the case

4  without it."  Paiute-Shoshone Indians, 637 F.3d at 997 (internal quotations and citations

5  omitted).  The absentee's interest "must be more than a financial stake, and more than

6  speculation about a future event."  Makah Indian Tribe, 910 F.2d at 558 (citations

7  omitted).  Impairment of the absentee's interest "may be minimized if the absent party is

8  adequately represented in the suit."  Id. (internal citations omitted).  In assessing whether

9  an existing party can adequately represent the interests of the absent party, courts

10  consider the following three factors: (1) "whether the interests of a present party to the

11  suit are such that it will undoubtedly make all of the absent party's arguments,"

12  (2) "whether the party is capable of and willing to make such arguments," and

13  (3) "whether the absent party would offer any necessary element to the proceedings that

14  the present parties would neglect."  Shermoen v. United States, 982 F.2d 1312, 1318

15  (9th Cir. 1992) (internal citations and quotations omitted).

16    In arguing that the Air District and EPA have a legally protected interest in this

17  action, Defendants liken this case to Nichols, where this Court held that "[a] public

18  agency has an interest in a lawsuit that could result in the invalidation or modification of

19  one of its . . . rules [or] regulations."   924 F. Supp. 2d at 1147 (quoting E.E.O.C.,

20  610 F.3d at 1082).  Contrary to Defendants' argument, however, this action is not

21  analogous to Nichols.

22    In Nichols, the plaintiff challenged the constitutionality of a regulation that became

23  part of the SIP during the course of litigation.  The plaintiff sought a declaration from the

24  Court that the regulation was preempted by federal law and sought a permanent

25  injunction on the regulation's enforcement.  Here, in contrast, Plaintiffs have brought a

26  citizen suit ostensibly to enforce compliance with two regulations that were promulgated

27  in the 1980s.  Plaintiffs argue that Rule 209, as written, requires BACT or emissions

28  offsets at Defendants' plants.  Plaintiffs are not seeking to have the rule invalidated or

1    altered like the plaintiffs in <u>Nichols</u>, nor would this suit have the possible outcome of

2    invalidating or altering Rule 209.  Thus, this situation is not a direct challenge to EPA's

3    final action of adopting the SIP, nor does it have the practical effect of upsetting EPA's

4    final action.  <u>See</u> <u>id.</u> at 1139.

5        In adjudicating a citizen suit, the Court only has jurisdiction to enforce a regulation

6    as written.  <u>See</u> <u>El Comité Para El Beinstar de Earlimart v. Warmerdam</u>, 539 F.3d 1062,

7    1066, 1073 (9th Cir. 2008) (holding that in a citizen suit under the CAA, the district court

8    had jurisdiction only to enforce an "emission standard or limitation," and that any

9    challenge related to the validity of the SIP "would have to be brought as a petition to

10   review the EPA's rulemaking process").  "Plaintiffs seeking to bring a citizen suit for

11   violation of an emission standard or limitation contained in a SIP must allege a violation

12   of a specific strategy or commitment in the SIP."  <u>Cmtys. for a Better Env't v. Cenco Ref.</u>

13   <u>Co.</u>, 180 F. Supp. 2d 1062, 1077 (C.D. Cal. 2001) (internal citation and quotation

14   omitted).  A citizen suit "may not be maintained solely to force regulators to attain the [air

15   quality standards] or to modify or amend a SIP to conform to a plaintiff's own notion of

16   proper environmental policy."  <u>Id.</u>[6]   Thus, there are two possible outcomes in this case:

17   (1) Plaintiffs are correct and Defendants have violated Rule 209, resulting in a Court

18   order that enforces Rule 209 against Defendants; or (2) Plaintiffs are incorrect and

19   Defendants have not violated Rule 209, resulting in a judgment in Defendants' favor.

20   There is no third option in which this suit, as currently brought, results in the modification

21   of Rule 209.

22       While the regulations are not in danger of invalidation or modification, the Court

23   agrees with Defendants that Plaintiffs directly challenge the Air District's previous

24   application, and therefore interpretation, of Rule 209.  Multiple permits have been issued

25   to Defendants, and during each of those permitting processes, the Air District

26   determined that Defendants were not required to install BACT or obtain emissions

27   _____

         [6] Defendants' argument that this action was incorrectly brought as a citizen suit is discussed

28   below.

1   offsets under Rule 209.  The onus was on the Air District to make this determination.[7]

2   Thus, it is disingenuous for Plaintiffs to claim that their Complaint does not suggest "that

3   the District misapplied its own rules."  Pls.' Opp'n., ECF No. 22, at 10.  That is exactly

4   what the Complaint alleges.  See Compl., ECF No. 1, at ¶ 8 (Defendants applied for "and

5   obtained" permits in violation of Rule 209-A and 209-B); ¶¶ 81-82 (Defendants "applied

6   for, and [the Air District] issued" ATC permit in violation of Rule 209-A); ¶ 87 (Defendants

7   applied for "and obtained" ATC Permit in violation of Rule 209-A); ¶¶ 94-95 (Defendants

8   applied for "and obtained" PTO permits from the Air District which should have been

9   denied by the Air District); ¶¶ 103-104 (Defendants applied for "and obtained" PTO

10  permits from the Air District in violation of Rule 209-B); and ¶ 119 (Defendants "illegally

11  obtained PTOs that fail to comply with Rule 209-B" from the Air District).

12          However, a challenge to the interpretation of regulations does not rise to the level

13  of "invalidation or modification."   Citizen suits frequently challenge the interpretation of a

14  regulation, as the suits are often brought under a claim that a state agency issued an

15  invalid permit or incorrectly determined that a permit was not necessary.  See

16  Hammersly, 299 F.3d at 1013-15 (determining that a citizen suit was appropriate to

17  challenge the state agency's failure to issue a permit); Cenco, 180 F. Supp. 2d at 1082

18  (holding that even though defendants already had a permit from the local air district, an

19  allegedly invalid permit does not insulate the applicant from a citizen suit).

20          [7] The first section of the regulation states:

21          The Air Pollution Control Officer shall deny an authority to construct for
22          any new stationary source or modification, or any portion thereof, unless:

23          The new source or modification, or applicable portion thereof, complies
            with the provisions of this rule and all other applicable district rules and
24          regulations; and

25          The applicant certifies that all other stationary sources in the State which
            are owned or operated by the applicant are in compliance, or on approved
26          schedule for compliance, with all applicable emissions limitations and
            standards under the Clean Air Act (42 USC 7401 et. seq.) and all
27          applicable emission limitations and standards which are part of the State
            Implementation Plan approved by the Environmental Protection Agency.

28          Rule 209-A(A) (emphasis added).

1    The general rule is that "federal and state agencies administering federal

2    environmental laws are not necessary parties in citizen suits to enforce the federal

3    environmental laws." Hammersley, 299 F.3d at 1014 (citing Friends of Earth v. Carey,

4    535 F.2d 165, 173 (2d Cir. 1976) (EPA not a necessary party in Clean Air Act citizen

5    suit); Metro. Wash. Coal. for Clean Air v. Dist. of Columbia, 511 F.2d 809, 814-15 (D.C.

6    Cir. 1975) (per curiam) (same); Sierra Club v. Young Life Campaign, Inc., 176 F. Supp.

7    2d 1070, 1078-80 (D. Colo. 2001) (state not necessary party in Clean Water Act citizen

8    suit); Student Pub. Interest Research Group of N.J., Inc. v. Monsanto Co., 600 F. Supp.

9    1479, 1484 (D. N.J. 1985) (state and EPA not necessary parties in Clean Water Act

10   citizen suit). While that maxim usually refers to situations where the agencies decide not

11   to prosecute the action themselves, it also applies to situations like this, where the

12   agency is a possible defendant. The citizen suit provision allows citizens to sue the

13   violators directly without including the administering agencies as defendants. Id.

14   While the Air District may have an interest in defending its current interpretation of

15   the rules, this interest would be well represented by Defendants, as the beneficiaries of

16   permits issued under that current interpretation. The Court does not doubt that the

17   interests of Defendants "are such that [they] will undoubtedly make all of the absent

18   party's arguments," that Defendants are "capable of and willing to make such

19   arguments," and that the Air District "would offer any necessary element to the

20   proceedings that the present parties would neglect." Shermoen, 982 F.2d at 1318.

21   Therefore, this is not enough to make the Air District a necessary party.

22   Because the EPA and Air District do not have a sufficient interest in this case to

23   be necessary parties, they also cannot be considered indispensable. "Indispensable

24   parties under Rule 19(b) are persons who not only have an interest in the controversy,

25   but an interest of such a nature that a final decree cannot be made without either

26   affecting that interest, or leaving the controversy in such a condition that its final

27   termination may be wholly inconsistent with equity and good conscience." E.E.O.C.,

28   400 F.3d at 780 (internal quotation marks and citation omitted). Accordingly, the Court

1   has jurisdiction to consider the merits of this case and must deny Defendants' Motion to

2   Dismiss for Failure to Join Necessary and Indispensable Parties.

3       **B.  FRCP 12(b)(6) Motion to Dismiss**

4       The Court will first address the threshold issue of whether this case was

5   appropriately brought as a citizen suit.  Plaintiffs' Complaint is based on two assertions:

6   (1) that permits issued for Defendants' existing plants were improperly issued by the Air

7   District because they did not comply with Rule 209; and (2) that Defendants should have

8   sought a permit for the "Complex" of plants because it qualifies as a stationary source

9   under Rule 209.  Pursuant to section 304(a) of the federal Clean Air Act, a citizen suit

10  may be brought against any person who violates an "emission standard or limitation."

11  Contrary to Defendants' argument that a citizen suit must be brought in order to enforce

12  a standard or limitation in a permit, the term "emission standard or limitation" includes "a

13  schedule or timetable of compliance, emission limitation, standard of performance or

14  emission standard" and "any other standard, limitation, or schedule established . . .

15  under any applicable State implementation plan approved by the Administrator, any

16  permit term or condition, <u>and any requirement to obtain a permit as a condition of</u>

17  <u>operations</u>."  42 U.S.C. § 7604(f) (emphasis added).

18      Rule 209 is an emissions standard or limitation contained in California's SIP.  The

19  regulation requires applicants to obtain permits prior to construction (ATC) and prior to

20  beginning operations (PTO).  As discussed previously, the fact that the Air District has

21  issued permits that purport to comply with Rule 209 or have chosen not to issue a permit

22  for the Complex as a whole under Rule 209 does not make this action inappropriate for a

23  citizen suit.  <u>See</u> <u>Cenco</u>, 180 F. Supp. 2d at 1082; <u>Hammersley</u>, 299 F.3d at 1011-12.

24  Once it is established that the citizen suit seeks to enforce an emissions standard or

25  limitation, the Court must only confirm that the procedural requirements were met.

26  <u>Hammersley</u>, 299 F.3d at 1012.  Here, Plaintiffs have complied with the procedural

27  requirements by notifying the EPA and the Air District sixty days before commencing this

28  litigation.   Thus, the Court has jurisdiction to consider the merits of Plaintiffs' claims.

1      The Court will next address whether Rule 209 applies to Defendants' fugitive

2  emissions.  The only emissions from Defendants' plants are fugitive; that is, they come

3  from leaks at the plant and not from a smoke stack or chimney like a "point source"

4  emission.  See Ala. Power v. Costle, 636 F.2d 323, 368 (D.C. Cir. 1979).  There is no

5  definition for "fugitive emissions" in Rule 209.  Defendants argue that because Rule 209

6  does not define "fugitive emissions," the Rule should be interpreted in a manner

7  consistent with other federal law regarding fugitive emissions.  Under federal law, fugitive

8  emissions from a stationary source are not included in determining whether the source is

9  a "major stationary source" (unless the source belongs in one of 28 listed categories,

10  geothermal binary power plants not included).  See 40 CFR. 70.2.  Defendants' plants

11  fall under the minor source program, so this federal rule is not directly on point.[8]

12      The plain language of Rule 209 simply states that the rule applies to "any

13  pollutant for which there is a national ambient air quality standard (excluding carbon

14  monoxide), or any precursor of such pollutant."  Rule 209-A(B)(2)(a).  As previously

15  stated, VOCs are regulated as precursors to Ozone, for which there is a national

16  ambient air quality standard.  "As a general interpretative principle, 'the plain meaning of

17  a regulation governs.'"  Safe Air for Everyone, 488 F.3d at 1097 (quoting Wards Cove

18  Packing Corp. v. Nat'l Marine Fisheries Serv., 307 F.3d 1214, 1219 (9th Cir. 2002)). "The

19  plain language of a regulation, however, will not control if 'clearly expressed

20  [administrative] intent is to the contrary or [if] such plain meaning would lead to absurd

21  results.'"  Id. (quoting Dyer v. United States, 832 F.2d 1062, 1066 (9th Cir. 1987)).

22  Defendants argue that when calculating total emissions it would be absurd for fugitive

23  emissions to be exempt for large, major sources but not for minor sources.  While

24  persuasive, at this stage in the litigation, the Court is not willing to infer a distinction

25  ///

26    [8] In the regulations of major sources, the Air District does include the same definition and exception found in the federal regulations.  See Rule 218(B)(7) ("Fugitive emissions of these pollutants

27  shall be considered in calculating total emissions for stationary sources in accordance with 40 CFR Part 70.2); and Rule 217(II)(Z)(2) (same).

28

1    between fugitive and point source emissions in Rule 209 when they are not clearly

2    delineated in the Rule itself.[9]

3         The Court also notes that the Air District has been regulating Defendants'

4    emissions, even though they are fugitive, in each permit it issued to Defendants over the

5    past 25 years.  The permits have also limited the fugitive emissions from Defendants'

6    plants to 250 pounds per day, ostensibly to avoid triggering Rule 209's BACT and

7    emission offsets requirements.  Defendants argue that a permit limitation is distinct from

8    a requirement in the regulation itself to consider fugitive emissions when calculating a

9    net emissions increase.  While this may be true, at this stage in the litigation, the Court

10   finds that the plain language of the Rule along with the previous regulation of fugitive

11   emissions by the Air District is sufficient to show that Plaintiffs may have a cause of

12   action against Defendants under Rule 209 based solely on fugitive emissions.

13        At the conclusion of the parties' briefing on the Motions to Dismiss, Plaintiffs raise

14   two remaining arguments as to how Defendants violated Rule 209-A:[10] (1) that in 2010,

15   the issuance of PTO permits combining of MP-I West with MP-I East and MP-II with

16   PLES-I violated Rule 209 because the permits did not impose BACT and offset

17   requirements despite the fact that the emissions could be as high as 500 pounds per day

18   per combined plant; and (2) that Defendants' four existing plants constitute a single

19   stationary source within the meaning of Rule 209, and thus when each facility was

20   permitted, Defendants added another 250 pounds per day of VOCs to the "Complex"

21   without obtaining the appropriate permits under Rule 209.

22   ///

23

24        [9] This is especially true since the major source regulations cited by Defendants show that the Air
     District is capable of making a distinction between fugitive and point source emissions, but chose not to do
25   so in this regulation.

26        [10] By failing to oppose Defendants' arguments in their Motion to Dismiss, Plaintiffs appear to
     concede that the 2013 modification, which involved an upgrade to MP-I's facility turbines and condensers
27   and approved a change in motive fluid in order to decrease emissions, does not trigger the BACT or offset
     requirements of Rule 209.  See Tatum v. Schwartz, No. 2:06-cv-01440-DFL-EFB, 2007 WL 419463, *3
28   (E.D. Cal. Feb. 5, 2007).  Therefore, Plaintiffs' First Cause of Action, which pertains to the 2013
     modification, must be DISMISSED.

1    In regard to the combining of the plants in 2010, Defendants argue that in both

2    cases, two 250 pounds per day plants became one 500 pounds per day plant, which

3    cannot lead to an increase in emissions.  Defendants contend that the amount of

4    emissions allowed in the permit establishes the emissions amount when calculating

5    whether there would be an increase.  Rule 209 does state that "emissions from an

6    existing source shall be based on the specific limiting conditions set forth in the source's

7    authority to construct and permit to operate, and, <u>where no such conditions are</u>

8    <u>specified</u>, on the actual operating conditions of the existing source averaged over the

9    three consecutive years immediately preceding the date of application."   Rule

10   209-A(C)(2) (emphasis added).  Since there were conditions in the permits limiting these

11   plants to 250 pounds per day, that amount is considered the emissions level for those

12   existing sources.

13   However, there is a different test used for determining whether there is a net

14   increase in emissions.

15
16   A net increase for a modification is determined by comparing
     the yearly emissions profiles for the existing source to the
16   yearly emissions profiles for the proposed source after
     modification.   A net increase in emissions exists whenever
17   any part of an emissions profile for a modified source
     exceeds the emission profile for the existing source.
18

19   Rule 209-A(C)(3).  Therefore, the Court would have to look at the emissions levels in

20   preceding years to determine whether there would be a net increase in emissions.

21   According to Plaintiffs, the emissions from MP-I East and MP-I West had dropped to less

22   than half of their permitted capacity due to aging equipment, so there could have been a

23   net emissions increase from the previous yearly levels to the newly permitted amount of

24   emissions.  Compl. at ¶ 61.  Because of this, Plaintiffs argue that there remains a factual

25   issue on the previous level of emissions, which cannot be determined on a motion to

26   dismiss. The Court disagrees, as this issue can be determined based on the

27   ///

28   ///

1   permits themselves, of which the Court can take notice in determining this Motion to

2   Dismiss.[11]

3       When the plants were "combined" in 2010, the Air District issued two separate

4   ATCs and two separate PTOs for MP-I: one for MP-I East and one for MP-I West.  The

5   Air District took the same approach with the combination of PLES-I and MP-II.  The most

6   recently issued permits for the PLES-I and MP-II plants clearly state that "the combined

7   point and fugitive n-butane emissions shall be limited to 250 pounds per day" for each

8   plant.  Jones Decl., ECF No. 15-18 at 3 (PLES-I) and ECF No. 15-19 at 3 (MP-II).

9   Additionally, Plaintiffs have not alleged facts sufficient to show that the "combining" of

10  the facilities was a modification under Rule 209.  Modification is defined as "any physical

11  change in, change in method of operation of, or addition to an existing stationary source,

12  except that routine maintenance or repair shall not be considered to be a physical

13  change."  Rule 209-A(F)(2).  A change in how the plants are described in the renewed

14  PTO permits does not appear to be a change in the plants themselves or in the method

15  of operation.

16      Even if a modification did occur, while the total emissions from both plants can be

17  up to 500 pounds per day, the net increase in emissions into the atmosphere is no more

18  than it was when the plants had individual limits of 250 pounds per day.  While Plaintiffs

19  argue that the plants were previously operating at "less than half" capacity, since each

20  plant remains limited to 250 pounds per day, the plants would have to operate at zero

21  capacity for there to be a net emissions increase of 250 pounds per day.  Thus, no

22  matter what the actual emissions were over the previous years, it is nearly impossible for

23  the modification to result in a net increase of 250 pounds per day unless Plaintiffs could

24  show that the plants were not operating at all.  Therefore, Plaintiffs second, third, fourth

25  and fifth causes of actions are DISMISSED.

26  _____
    [11] When deciding a motion to dismiss, the Court "may consider evidence on which the complaint
27  'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's
    claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." Marder v.
28  Lopez, 450 F.3d 445, 448 (9th Cir. 2006).  Plaintiffs have not disputed the authenticity of the permits
    proffered by Defendants and have in fact cited to them in their Opposition.

1  Finally, in the eighth cause of action, Plaintiffs' argue that Defendants' "Complex"

2  of plants constitutes a single stationary source within the meaning of Rule 209, and thus

3  when each facility was permitted Defendants added another 250 pounds per day of

4  emissions to the Complex's overall emissions.  Plaintiffs contend that Defendants

5  "piecemealed" their permitting by slowly adding plants until they had total emissions of

6  1,000 pounds per day but avoided the requirement in Rule 209 to offset these emissions

7  or try to prevent the emissions by installing BACT once the emissions exceeded 250

8  pounds per day.

9  Under Plaintiffs' reading of Rule 209, the complex should be viewed as a single

10  stationary source because the plants are owned and operated by the same company,

11  located on adjacent lands, and share a single geothermal wellfield, a common control

12  room, common pipes that carry geothermal liquid to and from wellfield, and other

13  common facilities.  Rule 209-A defines "Stationary Source" as

14  any aggregation of air-contaminant emitting equipment which
15  includes any structure, building, facility, equipment,
   installation or operation (or aggregation thereof) which is
16  located on one or more bordering properties within the
   District and which is owned, operated, or under shared
17  entitlement use by the same person.   Items of air-
   contaminant-emitting equipment shall be considered
18  aggregated into the same stationary source, and items of
   non-air-contaminant-emitting equipment shall be considered
19  associated with air-contaminant-emitting equipment only if:

20  a.  The operation of each item of equipment is dependent
      upon, or affects the process of, the other; and

21  b.  The operation of all such items of equipment involves a
22     common raw material or product.

23  Emissions from all such aggregated items of air-contaminant-
   emitting equipment and all such associated items of non-air-
24  contaminant-emitting equipment of a stationary source shall
   be considered emissions of the same stationary source.

25  Rule 209-A(F)(3).

26  Defendants counter that Rule 209 is triggered only if a new stationary source or

27  modification to an existing source itself results in a net increase in emissions of 250

28  pounds per day, and "the Air District's minor source rules do not aggregate permit limits

1 | from existing sources with those from new sources or modifications when assessing the
2 | 250 pounds per day trigger under Rule-209A(D)."  Defs.' Reply, ECF No. 24, at 7.

3 | It is not clear from the language of the regulation when and how a determination
4 | is made on what constitutes a stationary source under Rule 209.  But it appears from the
5 | face of the complaint that this argument is plausible due to location and ownership of
6 | Defendants' plants and the definition of stationary source contained in the regulation.  It
7 | also seems contrary to the intent of the regulation that an applicant could avoid
8 | triggering Rule 209's offset and BACT requirements by simply opening new plants next
9 | to existing plants, each emitting 250 pounds per day of VOCs.  A pleading must contain
10 | "only enough facts to state a claim to relief that is plausible on its face."  Twombly,
11 | 550 U.S. at 570.  While the Court has doubts about Plaintiff's success of recovery, the
12 | complaint may proceed on the eighth cause of action.  See id. at 556 ("[a] well-pleaded
13 | complaint may proceed even if it strikes a savvy judge that actual proof of those facts is
14 | improbable, and 'that a recovery is very remote and unlikely'" ) (quoting Scheuer, 416
15 | U.S. at 236).

**CONCLUSION**

19 | For the foregoing reasons, Defendant's first Motion to Dismiss (ECF No. 14) is
20 | DENIED and Defendant's Second Motion to Dismiss (ECF No. 17) is GRANTED with
21 | leave to amend in part and DENIED in part.  Plaintiffs' case proceeds on the eighth
22 | cause of action only.  Not later than twenty (20) days following the date this
23 | Memorandum and Order is electronically filed, Plaintiffs may (but are not required to) file
24 | an amended complaint.
25 | ///
26 | ///
27 | ///
28 | ///

1   If no amended complaint is filed within said twenty (20) day time period, without further

2   notice to the parties, the causes of action dismissed by virtue of this Memorandum and

3   Order will be dismissed with prejudice.[12]

4           IT IS SO ORDERED.

5   Dated:  May 8, 2015

6

7

8   _____
    MORRISON C. ENGLAND, JR., CHIEF JUDGE

9   UNITED STATES DISTRICT COURT

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27   _____
     [12] Defendants are admonished that their attempts to avoid the page limit requirements set by the

28   Court by filing two motions to dismiss and putting over one hundred lengthy footnote in each filing will not
     be acceptable going forward and could be grounds for sanctions.