UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLOBAL COMMUNITY MONITOR, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MAMMOTH PACIFIC, LP, et al.,<br><br>Defendants. | No. 2:14-cv-01612-MCE-KJN<br><br>**MEMORANDUM AND ORDER** |

In bringing this action, Global Community Monitor, Laborers' International Union of North America Local Union No. 783, Randal Sipes, Jr., and Russel Covington ("Plaintiffs") seek a declaration that emissions from four geothermal plants located near Mammoth Lakes, California ("Mammoth Complex"), violate the Clean Air Act. Those plants were constructed and are operated by Defendants Mammoth Pacific, L.P., Ormat Nevada, Inc., and Ormat Technologies, Inc. ("Defendants"). Plaintiffs also seek preliminary and permanent injunctive relief requiring Defendants to install Best Available Control Technology ("BACT") and to obtain offsets for emissions generated by the Mammoth Complex. Presently before the Court is Defendants' second Motion to Dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6),

by which they argue Plaintiffs failed to exhaust their administrative remedies.[1] ECF No. 34. For the following reasons, Defendants' Motion is DENIED.[2]

## BACKGROUND

This is a Clean Air Act ("CAA") case in which the Court previously dismissed all but Plaintiffs' Eighth Cause of Action for failing to state a viable claim. ECF No. 27. By way of that cause of action, Plaintiffs argue that the construction and operation of geothermal plants within the Mammoth Complex as a single stationary source without the proper permits and without installing BACT or obtaining emissions offsets violates rules promulgated by the Great Basin Unified Air Pollution Control District (the "District") and approved by the United States Environmental Protection Agency ("EPA") as part of California's State Implementation Plan ("SIP").[3]

Some factual background is helpful in understanding how the CAA is implicated. Three of the four geothermal plants at issue—(1) Mammoth Pacific I (MP-I), which is made up of MP-I East and MP-I West; (2) Mammoth Pacific II (MP-II); and (3) Pacific Lighting Energy Systems Unit I (PLES-I)—are operational. The fourth plant, M-1, is a proposed replacement plant for MP-I that has thus far only received local land use permits. Within the plants, Defendants pump hot geothermal water from deep underground to heat volatile organic compounds ("VOC"), which in turn spin turbines to generate electricity. During this process, VOCs are emitted (in the form of fugitive emissions of either n-pentane or isobutene) through valves, flanges, seals, or other unsealed joints in facility equipment. VOCs combine with nitrogen oxides to form ozone

---

[1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

[2] Because oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs. E.D. Cal. Local Rule 230(g).

[3] EPA approval makes those regulations fully-enforceable as federal law. See Safe Air for Everyone v. U.S. EPA, 488 F.3d 1088, 1096-97 (9th Cir. 2007).

in the atmosphere. Ozone is a criteria air pollutant regulated by the CAA, and thus VOCs are regulated as ozone precursors. According to the United States Environmental Protection Agency ("EPA"), breathing ground-level ozone can result in a number of negative health effects, such as a decrease in lung function and inflammation of the airways. The individual Plaintiffs, and the entity Plaintiffs' members, live, work, and recreate in the direct vicinity of Defendants' plants and thus contend they are adversely affected by the air pollution generated by the Mammoth Complex.

       The District, which is not a party to this action, is a joint powers authority that establishes rules and regulations to reduce the emission of ozone-forming pollutants. On August 20, 1979, the District promulgated Rules 209-A and 209-B to regulate both the construction and operation of facilities where such emissions occur. Rule 209-A prohibits the District from issuing an authority to construct ("ATC") permit for any new stationary source (or modification thereof[4]) that emits 250 pounds per day or more of VOCs unless the facility obtains emissions offsets and installs BACT. Emissions offsets are reductions from other facilities equal to the amount of increased emissions and BACT is advanced pollution control technology that dramatically reduces pollution. Similarly, Rule 209-B prohibits the District from issuing a permit to operate ("PTO") for any new or modified stationary source to which Rule 209-A applies unless the owner or operator of the source has obtained an ATC permit granted pursuant to Rule 209-A. Together these rules ensure that all required emissions offsets will be implemented at start-up and maintained throughout the source's operational life. As indicated above, Rules 209-A and 209-B were approved by the EPA as part of California's SIP on June 18, 1982, and those regulations are fully-enforceable as federal law under the CAA. According to Plaintiffs, then, Defendants' violation of the District's Rules results in violation of the CAA.

       Defendants now move to dismiss this remaining claim on the basis that Plaintiffs

---

[4] Modification is defined as "any physical change in, change in method of operation of, or addition to an existing stationary source, except that routine maintenance or repair shall not be considered to be a physical change." Rule 209-A(F)(2).

1  failed to exhaust the CAA's administrative remedies.  Although Defendants previously
2  moved to dismiss this same complaint under Rule 12(b)(6), they did not raise this
3  argument in that motion.  ECF No. 17.  Several months after the Court granted in part
4  and denied in part that original motion, Defendants instead filed this new motion again
5  attacking Plaintiffs' remaining claim.  For the reasons that follow, Defendants' Motion is
6  DENIED.

## STANDARD

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations.  However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. (internal citations and quotations omitted).  A court is not required to accept as true a "legal conclusion couched as a factual allegation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).  "Factual allegations must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket

4

1  assertion, of entitlement to relief." Twombly, 550 U.S. at 555 n.3 (internal citations and
2  quotations omitted).  Thus, "[w]ithout some factual allegation in the complaint, it is hard
3  to see how a claimant could satisfy the requirements of providing not only 'fair notice' of
4  the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing Wright &
5  Miller, supra, at 94, 95).  A pleading must contain "only enough facts to state a claim to
6  relief that is plausible on its face." Id. at 570.  If the "plaintiffs . . . have not nudged their
7  claims across the line from conceivable to plausible, their complaint must be dismissed."
8  Id.  However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge
9  that actual proof of those facts is improbable, and 'that a recovery is very remote and
10 unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).
11        A court granting a motion to dismiss a complaint must then decide whether to
12 grant leave to amend.  Leave to amend should be "freely given" where there is no
13 "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice
14 to the opposing party by virtue of allowance of the amendment, [or] futility of the
15 amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v.
16 Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to
17 be considered when deciding whether to grant leave to amend).  Not all of these factors
18 merit equal weight.  Rather, "the consideration of prejudice to the opposing party . . .
19 carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183,
20 185 (9th Cir. 1987)).  Dismissal without leave to amend is proper only if it is clear that
21 "the complaint could not be saved by any amendment." Intri-Plex Techs. v. Crest Group,
22 Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006,
23 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir.
24 1989) ("Leave need not be granted where the amendment of the complaint . . .
25 constitutes an exercise in futility . . . .")).
26 ///
27 ///
28 ///

5

**ANALYSIS**

According to Defendants, Plaintiffs' remaining claim must be dismissed because Plaintiffs did not challenge any of the permits the District granted to Defendants pursuant to the administrative procedures in force when those permits were issued in 1991. Plaintiffs disagree, of course, arguing that: (1) Defendants' motion is procedurally barred; and (2) regardless, the only administrative procedure they were actually required to follow was to provide Defendants with 60-days notice of their intent to sue.  Each of Plaintiffs' arguments is well taken.

First, Rule 12(g)(2) prohibits successive Rule 12(b) motions where the defenses asserted in the second motion were available when the first motion was made. Parker v. United States, 110 F.3d 678, 682 (9th Cir. 1997).  The purpose of Rule 12(g)(2) is to avoid delay and discourage dilatory tactics. Aetna Life Ins. Co. v. Alla Medical Services, Inc., 855 F.2d 1470, 1475 n.3 (9th Cir. 1988).  Defendants brought their first Rule 12 motion on September 8, 2014.  ECF No. 17.  It is undisputed that their belatedly-asserted exhaustion argument was available at that time.  Indeed, Defendants even discussed Plaintiffs' purported failure to exhaust their administrative remedies in the previous Rule 12 motion's moving papers. See ECF No. 17 at 22.  Then, in their reply, Defendants expressly disclaimed that they were making an exhaustion argument that could support dismissal of Plaintiffs' claims. ECF No. 25 at 9 n. 38.  Because Defendants' exhaustion argument was available when they filed their first Rule 12 motion, the instant motion is barred by Rule 12(g)(2).[5]

---

[5] The Court does not see any reason in this case to exercise its discretion to entertain the instant motion despite the procedural bar. See Ass'n of Irritated Residents v. C&R Vanderham Dairy, 2006 WL 2644896 at *7 (E.D. Cal. 2006) (concluding that courts have the power to hear such motions when they are not brought in bad faith and resolution will expedite disposition of the case on the merits). It also declines Defendant's invitation to convert this motion to one for summary judgment because doing so would undermine the purpose of Rule 12(g)(2). See Wartsila NSD N. Am., Inc. v. Hill Int'l, Inc., 2004 U.S. Dist. LEXIS 28921 at *17 (explaining that treating a motion barred by Rule 12(g)(2) as a motion for summary judgment would "create the precise inefficiencies the Rule is designed to avoid."). While the Rules permit a properly filed Rule 12 motion to be treated as a motion for summary judgment, nothing in the Rules permits the Court "to treat an improperly filed and untimely motion as a properly filed summary judgment motion." Id.

6

Second, Defendants' substantive argument would fail at this juncture in any event. Section 304 of the CAA contains no facial statutory exhaustion requirement other than the 60-day notice provision of section 304(b). Nor has the Ninth Circuit identified any exhaustion requirement for challenges to Title I permits since the administrative challenge procedures were removed from the SIP in 2004. While courts in this circuit have nonetheless determined that administrative exhaustion requirements with respect to claims like Plaintiffs' CAA cause of action may be imposed in the Court's discretion, e.g., Vanderham, 435 F. Supp. 2d at 1087, the parties have not briefed the Court on whether and how it should exercise its discretion. Accordingly, Defendant's Motion is DENIED on this basis as well.

Should Defendants choose to raise this exhaustion argument again in a properly filed motion for summary judgment, the Court will expect briefing on the following three issues: (1) the specific legal and factual questions the Court must decide in order to impose an exhaustion requirement; (2) whether the Court should exercise its discretion and impose an exhaustion requirement here; and (3) if it does exercise such discretion, whether the case should be dismissed or allowed to proceed. Id. The parties must also address the fact that at least three district courts within this circuit have declined to exercise their discretion to impose an administrative exhaustion requirement prior to filing a citizen suit under section 304 of the Clean Air Act. Id. at 1088.[6]

///
///
///
///
///

---

[6] Defendants are admonished for the last time that the use of lengthy footnote citations is unacceptable. ECF No. 27 at 22 n.12. Given the Court's denial of the instant motion, it declines to sanction Defendants' counsel at this time. However, if Defendants persist in abusing footnote citations, the Court will issue an order to show cause, upon no further notice to the parties, as to why sanctions should not be imposed.

**CONCLUSION**

For the reasons just stated, Defendants' Motion to Dismiss (ECF No. 34) is DENIED.

IT IS SO ORDERED.

Dated: October 13, 2015

_____
MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT