1

2

3

4

5

6

7                          UNITED STATES DISTRICT COURT

8                          EASTERN DISTRICT OF CALIFORNIA

9

| | |
|---|---|
| 10   GLOBAL COMMUNITY MONITOR, a California nonprofit corporation; LABORERS' INTERNATIONAL UNION OF NORTH AMERICA LOCAL UNION NO. 783, an organized labor union; RANDAL SIPES, JR., an individual; and RUSSEL COVINGTON, an individual, | No.  2:14-cv-01612-MCE-KJN |
| | **MEMORANDUM AND ORDER** |
| Plaintiffs, | |
| v. | |
| MAMMOTH PACIFIC, L.P., a California Limited Partnership; ORMAT NEVADA, INC., a Delaware Corporation; ORMAT TECHNOLOGIES, INC., a Delaware Corporation; and DOES I–X, inclusive, | |
| Defendants. | |

21          Plaintiffs Laborers' International Union of North America Local Union No. 783,

22   Randal Sipes, Jr., and Russel Covington filed a citizen suit pursuant to section 304(a) of

23   the federal Clean Air Act ("CAA"), 42 U.S.C. § 7604, which allows any person to bring a

24   lawsuit in federal court against any person who violates an "emission standard or

25   limitation."[1]

---

[1] The term "emission standard or limitation" includes "a schedule or timetable of compliance, emission limitation, standard of performance or emission standard" and "any other standard, limitation, or schedule established . . . under any applicable State implementation plan approved by the Administrator, any permit term or condition, and any requirement to obtain a permit as a condition of operations." 42 U.S.C. § 7604(f).

1      Presently before the Court are four motions:  (1) Plaintiffs' Motion for Partial
2 Summary Judgment, ECF No. 75; (2) Defendants' Motion for Summary Judgment, ECF
3 No. 82; (3) Defendants' Motion to Exclude, ECF No. 90; and (4) Defendants' Motion for
4 Leave to File Surreply, ECF No. 100.  For the reasons that follow, Defendants' Motion for
5 Summary Judgment is GRANTED.  However, Defendants' Motion for Leave to File
6 Surreply is DENIED, and the Defendants' counsel is directed to pay a sanction of $2,500
7 for making a frivolous filing, continuing to use lengthy footnotes, and ignoring page limits
8 despite the Court's prior warning.  Furthermore, in light of the disposition of Defendants'
9 Motion for Summary Judgment, Plaintiffs' Motion for Partial Summary Judgment and
10 Defendants' Motion to Exclude are DENIED AS MOOT.[2]

11

12                          **BACKGROUND**

13

14      Plaintiffs' Complaint asserts eight causes of action against Defendants Mammoth
15 Pacific, L.P., Ormat Technologies, Inc., and Ormat Nevada, Inc., the owners and
16 operators of several geothermal plants located in the Great Basin Valleys Air Basin.
17 Three of the plants—(1) Mammoth Pacific I ("MP-I"), which is made up of MP-I East and
18 MP-I West; (2) Mammoth Pacific II ("MP-II"); and (3) Pacific Lighting Energy Systems
19 Unit I ("PLES-I")—are operational.  Another plant, M-1, is a proposed replacement plant
20 for MP-I that has thus far only received local land use permits.
21      At the plants, Defendants use hot geothermal water pumped from deep
22 underground to heat volatile organic compounds ("VOCs"), which in turn spin turbines to
23 generate electricity.  The facilities emit VOCs (in the form of fugitive emissions of either
24 n-pentane or isobutene) through valves, flanges, seals, or other unsealed joints in facility
25 equipment.  VOCs combine with nitrogen oxides to form ozone in the atmosphere.
26 Ozone is a criteria air pollutant regulated by the CAA, and thus VOCs are regulated as

27 _____
28     [2] Because oral argument would not have been of material assistance, the Court ordered this matter submitted on the briefing.  E.D. Cal. L. R. 230(g).

1   ozone precursors.  According to the United States Environmental Protection Agency

2   ("EPA"), breathing ground-level ozone can result in a number of negative health effects,

3   including induction of respiratory symptoms, decrements in lung function, and

4   inflammation of airways.  Plaintiffs are individuals and an organization with members

5   who live, work, and recreate in direct vicinity of the plants.

6       The Great Basin Unified Air Pollution Control District (the "Air District") is the state

7   agency charged with developing air regulations for Mono, Inyo and Alpine Counties.

8   The Air District has established rules and regulations to reduce the emission of ozone-

9   forming pollutants.  On August 20, 1979, the Air District promulgated Rules 209-A and

10  209-B.  Rule 209-A prohibits the Air District from issuing an authority to construct ("ATC")

11  permit for any new stationary source or modification[3] to a stationary source that emits

12  250 pounds per day or more of VOCs unless the facility obtains emissions offsets and

13  installs the best available control technology ("BACT").  Emissions offsets are reductions

14  from other facilities equal to the amount of increased emissions and BACT is advanced

15  pollution control technology that dramatically reduces pollution.  Rule 209-B prohibits the

16  Air District from issuing a permit to operate ("PTO") for any new or modified stationary

17  source to which Rule 209-A applies unless the owner or operator of the source has

18  obtained an ATC permit granted pursuant to Rule 209-A.  In combination, these rules

19  ensure that all required emissions offsets will be implemented at start-up and maintained

20  throughout the source's operational life.  Rules 209-A and 209-B were approved by the

21  EPA as part of California's State Implementation Plan ("SIP") on June 18, 1982, making

22  the regulations fully enforceable federal law.  See Safe Air for Everyone v. U.S. EPA,

23  488 F.3d 1088, 1096-97 (9th Cir. 2007).

24      Plaintiffs' Complaint alleges that Defendants violated both Rules 209-A and 209-

25  B.  With respect to the existing plants, Plaintiffs allege that while originally separately

26  permitted as four plants in the late 1980s, in 2010 Defendants applied for and obtained

27      [3] Modification is defined as "any physical change in, change in method of operation of, or addition
    to an existing stationary source, except that routine maintenance or repair shall not be considered to be a
28  physical change."  Rule 209-A(F)(2).

3

1   PTOs from the Air District that authorize combined emissions limits for MP-I East and

2   MP-I West as a single source and for MP-II and PLES-I as a single source.  Each single

3   source was permitted to emit up to 500 pounds per day of fugitive VOC emissions—

4   double the limit under Rule 209-A—without receiving ATC permits that required installing

5   BACT and obtaining emissions offsets.  Additionally, Plaintiffs allege that in 2013, the Air

6   District issued ATC permits for a modification of MP-I without requiring Defendants to

7   install BACT or obtain emissions offsets.

8         Plaintiffs' Complaint also alleges that Defendants have operated the three existing

9   geothermal plants for over twenty years as a single stationary source without applying

10  for the permits required by Rules 209-A and 209-B.[4]  Plaintiffs contend that the complex

11  should be viewed as a single stationary source because the plants are owned and

12  operated by the same company, located on adjacent lands, and share a single

13  geothermal wellfield, a common control room, common pipes that carry geothermal liquid

14  to and from the wellfield, and other common facilities.  Plaintiffs request that the Court

15  issue a preliminary and permanent injunction requiring Defendants to cease and desist

16  from any operation of the existing plants until Defendants install BACT and obtain

17  emissions offsets.

18        While Plaintiffs originally challenged the proposed M-1 facility's permitting and

19  sought an injunction to halt construction, they then conceded that the Court does not

20  have jurisdiction to consider these claims since the Air District has yet to issue permits to

21  Defendants for this plant.  ECF No. 21, at 8.  Accordingly, the Court dismissed Plaintiffs'

22  sixth and seventh causes of action, which pertain to the M-1 facility.  ECF No. 27.  The

23  Court also dismissed Plaintiffs' first through fifth causes of action for failure to state a

24  claim under Federal Rule of Civil Procedure ("Rule") 12(b)(6).

25                  [4] Rule 209-A defines "Stationary Source" as

26                        any aggregation of air-contaminant emitting equipment which includes

27                        any structure, building, facility, equipment, installation or operation (or
                          aggregation thereof) which is located on one or more bordering properties

28                        within the District and which is owned, operated, or under shared
                          entitlement use by the same person.

1    The first cause of action was premised on the 2013 modification of the MP-I plant,

2  alleging that the modification should have triggered BACT requirements under

3  Rule 209-A.  However, the modification reduced the plant's emissions and therefore did

4  not result in the "net increase in emissions of 250 or more pounds" required under

5  Rule 209-A(B)(2) before a BACT requirement is imposed.  The second, third, fourth, and

6  fifth causes of actions were based on the 2010 combining of emissions limits for MP-I

7  East and MP-I West as a single source and for MP-II and PLES-I as a single source.

8  Because combining the limits amounted to nothing more than an administrative change,

9  no modification occurred that would have triggered BACT requirements.  Furthermore,

10  even if combining emission limits constituted a modification under Rule 209-A, it could

11  not possibly have caused a "net increase in emissions of 250 or more pounds" and again

12  Rule 209-A would not have imposed a BACT requirement.

13    All that remains pending before the Court is Plaintiffs' Eighth Cause of action,

14  which alleges all four plants should be considered a single source.  Because the plants

15  were all permitted individually when constructed, Plaintiffs contend that Defendants are

16  in violation of Rule 209-A and should have been required to install a BACT.

17

18                              **STANDARD**

19

20    The Federal Rules of Civil Procedure provide for summary judgment when "the

21  movant shows that there is no genuine dispute as to any material fact and the movant is

22  entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Celotex Corp. v.

23  Catrett, 477 U.S. 317, 322 (1986).  One of the principal purposes of Rule 56 is to

24  dispose of factually unsupported claims or defenses.  Celotex, 477 U.S. at 325.

25    Rule 56 also allows a court to grant summary judgment on part of a claim or

26  defense, known as partial summary judgment.  See Fed. R. Civ. P. 56(a) ("A party may

27  move for summary judgment, identifying each claim or defense—or the part of each

28  claim or defense—on which summary judgment is sought."); see also Allstate Ins. Co. v.

1   <u>Madan</u>, 889 F. Supp. 374, 378–79 (C.D. Cal. 1995).  The standard that applies to a

2   motion for partial summary judgment is the same as that which applies to a motion for

3   summary judgment.  <u>See</u> Fed. R. Civ. P. 56(a); <u>State of Cal. ex rel. Cal. Dep't of Toxic</u>

4   <u>Substances Control v. Campbell</u>, 138 F.3d 772, 780 (9th Cir. 1998) (applying summary

5   judgment standard to motion for summary adjudication).

6          In a summary judgment motion, the moving party always bears the initial

7   responsibility of informing the court of the basis for the motion and identifying the

8   portions in the record "which it believes demonstrate the absence of a genuine issue of

9   material fact."  <u>Celotex</u>, 477 U.S. at 323.  If the moving party meets its initial

10  responsibility, the burden then shifts to the opposing party to establish that a genuine

11  issue as to any material fact actually does exist.  <u>Matsushita Elec. Indus. Co. v. Zenith</u>

12  <u>Radio Corp.</u>, 475 U.S. 574, 586–87 (1986); <u>First Nat'l Bank v. Cities Serv. Co.</u>, 391 U.S.

13  253, 288–89 (1968).

14         In attempting to establish the existence or non-existence of a genuine factual

15  dispute, the party must support its assertion by "citing to particular parts of materials in

16  the record, including depositions, documents, electronically stored information,

17  affidavits[,] or declarations . . . or other materials; or showing that the materials cited do

18  not establish the absence or presence of a genuine dispute, or that an adverse party

19  cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  The

20  opposing party must demonstrate that the fact in contention is material, i.e., a fact that

21  might affect the outcome of the suit under the governing law.  <u>Anderson v. Liberty Lobby,</u>

22  <u>Inc.</u>, 477 U.S. 242, 248, 251–52 (1986); <u>Owens v. Local No. 169, Assoc. of W. Pulp and</u>

23  <u>Paper Workers</u>, 971 F.2d 347, 355 (9th Cir. 1987).  The opposing party must also

24  demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is

25  such that a reasonable jury could return a verdict for the nonmoving party."  <u>Anderson</u>,

26  477 U.S. at 248.  In other words, the judge needs to answer the preliminary question

27  before the evidence is left to the jury of "not whether there is literally no evidence, but

28  whether there is any upon which a jury could properly proceed to find a verdict for the

6

1  party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251

2  (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)).  As the Supreme Court

3  explained, "[w]hen the moving party has carried its burden under Rule [56(a)], its

4  opponent must do more than simply show that there is some metaphysical doubt as to

5  the material facts." Matsushita, 475 U.S. at 586.  Therefore, "[w]here the record taken as

6  a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

7  'genuine issue for trial.'" Id. 87.

8          In resolving a summary judgment motion, the evidence of the opposing party is to

9  be believed, and all reasonable inferences that may be drawn from the facts placed

10  before the court must be drawn in favor of the opposing party.  Anderson, 477 U.S. at

11  255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

12  obligation to produce a factual predicate from which the inference may be drawn.

13  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), aff'd,

14  810 F.2d 898 (9th Cir. 1987).

15

16                                              **ANALYSIS**

17

18          Defendants move for summary judgment on the basis that Plaintiffs' claims are

19  time-barred under the statute of limitations.  Defs.' MSJ, at 7.  They argue that Plaintiffs

20  have only alleged a violation of Rule 209-A, and any violation of that rule could only have

21  occurred when the units were originally constructed.  Id. at 9–14.  Because the default

22  statute of limitations of five years under 28 U.S.C. § 2462 applies and Plaintiffs brought

23  this suit well over five years after the original ATCs were issued in the late 1980s,

24  Defendants contend that Plaintiffs' claims fail as a matter of law.  Id. at 8–9.  Plaintiffs,

25  conversely, argue that (1) Plaintiffs adequately alleged violations of both Rule 209-A and

26  Rule 209-B, (2) violations of Rule 209-A are ongoing, and (3) the 2009 and 2014 re-

27  permitting re-started the clock on the statute of limitations for Rule 209-A violations.  Pls.'

28  Opp'n to Defs.' MSJ, ECF No. 84, at 1–2.

1

### A.    Whether Plaintiffs Pled a Violation of Rule 209-B

2        As indicated, this Court's May 11, 2015, Order dismissed Plaintiffs' first through

3    seventh causes of action, leaving only the eighth cause of action for adjudication.  Mem.

4    & Order, ECF No. 27, at 21.  The dismissed causes of action alleged various violations

5    of Rule 209-A (first, second, fourth, and sixth) as well as Rule 209-B (third, fifth, and

6    seventh).  The sixth and seventh causes of action were dismissed as unripe because

7    they were based on permits for a new plant that had not yet been issued.  Id. at 4.  The

8    first, second, third, and fourth causes of action were premised on a contention that the

9    2009 and 2014 re-permitting required the application of a BACT.  Those causes of action

10    were dismissed because the Court found Rules 209-A and 209-B did not require a BACT

11    under the alleged circumstances.  Id. at 19.

12        Though the header of Plaintiffs' eighth cause of action is explicitly limited to

13    Rule 209-A ("Clean Air Act, 42 U.S.C. § 7604(a) – Violation of Rule 209-A"), Plaintiffs

14    argue that the cause of action also includes violations of Rule 209-B because it

15    incorporates the preceding paragraphs by reference.  Pls.' Opp'n to Defs.' MSJ, at 4–6.

16    This argument makes little sense.  It is true that the Complaint's "Introduction,"

17    "Jurisdiction and Prerequisites to Filing," "Parties," and "Factual Allegations" sections

18    contain references to Rule 209-B and allegations that Defendants have violated Rule

19    209-B.  However, the eighth cause of action contains no reference to Rule 209-B and is

20    in fact titled "Violation of Rule 209-A."  Accordingly, Plaintiffs cannot seriously contend

21    that their eighth cause of action includes any allegations based on Rule 209-B,

22    regardless of the incorporation of the Complaint's prior paragraphs.

23

### B.    Whether Violations of Rule 209-A Are Ongoing

24        In determining whether failure to obtain a valid preconstruction permit constitutes

25    a singular event or an ongoing violation, "the court must engage in a close examination

26    of the relevant 'permitting' scheme."  Coal. for Clean Air v. VWR Internat'l, LLC,

27    922 F. Supp. 2d 1089, 1105 (E.D. Cal. 2013).  Specifically, this determination hinges on

28

1  the relationship between preconstruction permits and operational permits.

2         In arguing that Defendants' alleged violations are ongoing, Plaintiffs rely heavily

3  on the Eleventh Circuit's decision in National Parks and Conservation Association v.

4  Tennessee Valley Authority ("National Parks II"), 502 F.3d 1316 (11th Cir. 2007), where

5  the court distinguished between the Alabama SIP at issue in that case and the

6  Tennessee SIP at issue in National Parks and Conservation Association v. Tennessee

7  Valley Authority ("National Parks I"), 480 F.3d 410 (6th Cir. 2007).  Plaintiffs claim that

8  National Parks II distinguished between "permitting scheme[s] in which the operating

9  permits required ongoing compliance with BACT requirements" as in Tennessee and

10  those that only imposed an "obligation to install BACT" upon construction as in Alabama.

11  Pls.' Opp'n to Defs.' MSJ, at 9.  Plaintiffs, however, misconstrue National Parks II.

12         This Court finds the Eleventh Circuit's analysis instructive, but comes to the

13  opposite conclusion of Plaintiffs.  The Eleventh Circuit did not base its decision on

14  whether the obligation to comply with BACT requirements was ongoing, but rather on

15  whether the obligation to apply a BACT was ongoing.[5]  Under the Tennessee SIP in

16  National Parks I, "the obligation to obtain an appropriate [construction] permit [was]

17  ongoing."  480 F.3d at 419 (emphasis added).  In National Parks II, however, "[t]he

18  relevant Alabama regulations . . . treated construction and operating permits separately."

19  502 F.3d at 1323.  There was no "analogous provision" in the Alabama SIP that created

20  a continuous obligation to obtain a preconstruction permit.  Id. at 1325 ("Tennessee's

21  [SIP] provided that, if a party failed to obtain a construction permit specifying emission

22  limitations at the time of construction or modification, a construction permit could be

23  issued at a later date 'to assure that these regulatory requirements are met.'").

24         The California SIP at issue in the instant case does not place an ongoing

25  obligation to obtain an ATC, but only requires that a new or modified stationary source

26         [5] Plaintiffs' argument appears to imply that some SIPs require application of BACT upon
construction, but impose no duty to actually use the BACT during operation, which makes little sense.  The
27  Court agrees that the California SIP requires compliance with BACT requirements during the life of the
stationary source.  The California SIP merely does not require installation of any additional BACT once
28  those required by a new or modified source's preconstruction permit are installed.

1    receive and comply with an ATC before receiving a PTO.  Unlike the Tennessee SIP in

2    National Parks I, the California SIP here contains no ongoing obligation to obtain ATCs.

3    See 480 F.3d at 419 ("[T]he obligation to obtain an appropriate permit is ongoing, and

4    applies even to those sources that did not obtain the appropriate permits before

5    construction.").  Thus, the California SIP is more like the Alabama SIP analyzed by the

6    Eleventh Circuit, and any violation of Rule 209-A is a singular, not ongoing, event.

7         The Eleventh Circuit also distinguished cases treating preconstruction permit

8    violations as continuing violations on the basis that they considered "integrated

9    construction and operating permits."  Id.  Indeed, cases cited by Plaintiffs in support of

10   treating Rule 209-A violations as ongoing make this very distinction.  See, e.g., Sierra

11   Club v. Portland Gen. Elec. Co., 663 F. Supp. 2d 983, 992 (D. Ore. 2009) ("[A]pproval to

12   construct a source under [the relevant permit] . . . authorizes construction and operation

13   of the source." (ellipsis in original) (emphasis added)).

14        This distinction between preconstruction and operation permits further supports

15   finding that Rule 209-A violations constitute a singular event.  While a PTO issued under

16   Rule 209-B requires obtaining and complying with an ATC, PTOs are separate permits

17   such that obtaining a legally invalid ATC does not necessarily invalidate a PTO.  A PTO

18   obtained under Rule 209-B requires only that the owner or operator of a source obtain

19   an ATC and comply with that ATC.  Defendants have done exactly that.  Furthermore,

20   even if an invalid ATC rendered a resulting PTO also invalid, Plaintiffs have failed to

21   allege a violation under Rule 209-B, as described above, and therefore cannot obtain

22   relief based on such a theory.

23

        **C.    Impact of the 2009 and 2014 Re-Permitting**

24
        In 2009, new ATCs and PTOs were issued, combining emissions limits between
25
     MP-I East and MP-I West, and between MP-II and PLES-I.  In 2014, new ATCs and
26
     PTOs were issued for a "major equipment overhaul."  Plaintiffs argue that in each case,
27
     the Mammoth Complex should have been treated as a single source.  Pls.' Opp'n to
28

1    Defs.' MSJ, at 12.  Thus, they continue, the ATCs issued in 2009 and 2014 were

2    unlawful.  Id. at 13.  Because Plaintiffs filed suit within five years of the issuance of those

3    ATCs, Plaintiffs argue their claim is not time-barred.  Id. at 14–15.

4           However, even if the Court found Plaintiffs' arguments persuasive, invalidating the

5    2009 and 2014 ATCs would not provide the relief Plaintiffs seek.  Defendants would

6    simply be forced to apply for an ATC that combined the emissions limits of all four units.

7    The Court has already ruled that combining the emissions limits of MP-I East and MP-I

8    West and of MP-II and PLES-I was not a modification that would trigger imposing a

9    BACT on the combined units.  Mem. & Order, at 19.  Similarly, combining the emissions

10   limits of all four would not constitute a modification, and thus any new ATC that

11   "remedied" the errors of the 2009 and 2014 ATCs would not achieve the relief sought.

12          BACTs can only be imposed when a new stationary source or a modification to a

13   stationary source results in a net increase in emissions of 250 or more pounds per day.

14   Reissuing the permits to treat the units as a single source would not constitute a

15   modification or result in any increase in emissions.  Nor would invalidation of the 2009

16   and 2014 ATCs warrant creating a legal fiction that the Mammoth Complex is a new

17   stationary source, as Plaintiffs urge.  See Pls.' Opp'n to Defs.' MSJ, at 13.  Additionally,

18   the "major equipment overhaul" completed in 2014 decreased emissions and therefore

19   cannot form a basis for imposing a BACT.  Thus, the 2009 and 2014 ATCs do not revive

20   any potential Rule 209-A violations committed when the units in the Mammoth Complex

21   were originally permitted.

22          **D.    Application of the Statute of Limitations to Claims For Injunctive**
             **Relief**
23

24          28 U.S.C. § 2462 creates a five-year statute of limitations for "action[s], suit[s] or

25   proceeding[s] for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or

26   otherwise."  Here, Plaintiffs seek injunctive relief.  Defendants maintain the five-year

27   statute of limitations nonetheless applies because of the concurrent remedy doctrine,

28   which bars injunctive relief if legal relief is time-barred.  See Cope v. Anderson, 331 U.S.

                                                        11

461, 464 (1947).  Plaintiffs, on the other hand, counter that the doctrine does not apply here because "civil penalties would likely serve a completely different purpose than the injunctive relief being sought."  Pls.' Opp'n to Defs.' MSJ, at 15 (quoting United States v. U.S. Steel Corp., 966 F. Supp. 2d 801, 813 (N.D. Ind. 2013)).

Ninth Circuit has not ruled on the application of 28 U.S.C. § 2462 to CAA citizen suits.  However, in Federal Election Commission v. Williams, 104 F.3d 237 (9th Cir. 2006), the Ninth Circuit held that 28 U.S.C. § 2462 applied to suits for injunctive relief under the Federal Election Campaign Act "because the claim for injunctive relief is connected to the claim for legal relief," id. at 240.  The Ninth Circuit's ruling is instructive here, and there is no doubt that the claim for injunctive relief is connected to any claim Plaintiffs could have asserted for legal relief.

Furthermore, other circuits, such as the Eleventh Circuit, have found Plaintiffs' reasoning unpersuasive in the CAA context:  "We are not aware of other authority for this novel distinction [between the purposes of relief] and are not persuaded that it is a meaningful one.  We conclude that the civil penalties and equitable relief sought in this case are concurrent because 'an action at law or equity could be brought on the same facts.'"  National Parks II, 502 F.3d 1316, 1328 (11th Cir. 2007) (quoting United States v. Telluride Co., 146 F.3d 1241, 1248 n.12 (10th Cir. 1998)).

Accordingly, 28 U.S.C. § 2462's five-year statute of limitations applies to Plaintiffs' claims for injunctive relief.  Because any of the alleged violations of the CAA could only have occurred over twenty years ago when the Mammoth Complex units were built, Plaintiffs' claim is time-barred.  Defendants' Motion for Summary Judgment is therefore GRANTED, and Plaintiffs' Motion for Partial Summary Judgment is DENIED as moot.

**MOTION TO FILE SURREPLY**

Both sides filed their own Motions for Summary Judgment, oppositions to each other's motions and replies to those oppositions, making very similar arguments whether

1   they were arguing in favor of their own motion or against their opponents' motion.  See

2   ECF Nos. 84, 88, 93, 94.  Defendants' Memorandum of Points and Authorities in support

3   of their MSJ totaled 29 pages, and their Reply ran 24 pages, despite the Pretrial

4   Scheduling Order setting a limit of 10 pages for replies.  Defendants also availed

5   themselves of the full 20 pages permitted in the Pretrial Scheduling Order in their

6   Opposition to Plaintiffs' MPSJ.  Despite these 83 pages of often duplicative arguments,

7   Defendants felt compelled to file a Motion for Leave to File a Surreply.

8        More specifically, Defendants contend that a surreply was necessary because

9   Plaintiffs submitted new evidence.  ECF No. 103, at 1.  However, they then contradict

10   themselves and admit that the evidence addressed in the Surreply was not actually new,

11   "since [it is] the same excerpts Plaintiffs relied upon in their opening brief."  Id.  Indeed,

12   Defendants' Surreply is directed at an argument raised in Plaintiffs' original Motion, see

13   id. at 34, an argument Defendants could have addressed in their Opposition.

14   Defendants' instant Motion is thus DENIED.

15        Moreover, the Court previously admonished Defendants against using lengthy

16   footnotes and otherwise attempting to avoid page limit requirements set by the Court.

17   Mem. & Order, ECF No. 27, at 22 n.12.  Nevertheless, Defendants' moving papers

18   continued to follow the same practices, ignored page limits set out by the Court, and

19   moved for leave to file a frivolous surreply.  For these reasons, Defendants' counsel is

20   hereby sanctioned in the amount of $1,500.

21

22                     **CONCLUSION**

23

24        For the reasons above, Defendants' Motion for Summary Judgment, ECF No. 82,

25   is GRANTED.  However, their Motion for Leave to File Surreply, ECF No. 100, is

26   DENIED, and the Court imposes sanctions against Defendants' counsel in the amount of

27   $1,500.  Said sanctions shall be paid to the Clerk of this Court within ten (10) days, and

28   ///

1   Defendants are further ordered to file a notice with this Court within the same ten

2   (10)-day period that the sanctions have in fact been remitted.

3         Finally, in light of the resolution of Defendants' Motion for Summary Judgment,

4   Plaintiffs' Motion for Summary Judgment, ECF No. 75, and Defendants' Motion to

5   Exclude, ECF No. 90, are DENIED as moot.

6         IT IS SO ORDERED.

7   Dated:  January 5, 2017

8

9   MORRISON C. ENGLAND, JR.
    UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28